"Steering Committee" means that certain committee composed of certain unaffiliated holders of Senior Notes and Subordinated Notes, as such committee may be reconstituted from time to time upon written notice to the Debtors.

"STRH Agreement" means the securities transfer, recapitalization and holders agreement, dated as of March 14, 2001, by and among RII, CSCL, and the other parties thereto, as amended from time to time.

"Subordinated Note Backstop Commitment" means the commitment by the Subordinated Note Committed Purchasers to subscribe to any Subordinated Note Rights that remain unsubscribed to following the Rights Offering, subject to the terms and conditions of the Backstop Commitment Agreement.

"Subordinated Note Backstop Fee" means the amount payable to the Subordinated Note Committed Purchasers pursuant to and in accordance with Section 3 of the Backstop Commitment Agreement.

"Subordinated Note Claims" means, collectively, the 9⅜% Subordinated Note Claims and the 11% Subordinated Note Claims.

"Subordinated Note Committed Purchasers" means, collectively, Fidelity National Special Opportunities, Inc., H Partners LP, Hoak & Co., Corriente Master Fund, LP and Joshua Tree Capital Management, LLC, and/or one or more of their respective affiliates and permitted assigns under the Backstop Commitment Agreement.

"Subordinated Note Indentures" means, collectively, the 11% Subordinated Note Indenture and the 9⅜% Subordinated Note Indenture.

"Subordinated Note Indenture Trustees" means, collectively, the 11% Subordinated Note Indenture Trustee and the 9⅜% Subordinated Note Indenture Trustee.

"Subordinated Note Rights" means the non-transferable, non-certificated rights to subscribe for up to 60,000 shares of Reorganized RII Series B Preferred Stock, at the price of $1,000.00 per share, on the terms and subject to the conditions set forth in the Subscription Approval Order.

"Subordinated Notes" means, collectively, the 9⅜% Subordinated Notes and the 11% Subordinated Notes.

"Subordinated Securities Claims" means all Claims against any Debtor that are subordinated, or subject to subordination, pursuant to section 510(b) or 510(c) of the Bankruptcy Code, including (a) any Claim arising from the rescission of a purchase or sale of Floating Rate Secured Notes, Senior Notes, Subordinated Notes or Equity Interests in any Debtor, (b) any Claim for damages arising from the purchase or sale of Floating Rate Secured Notes, Senior Notes, Subordinated Notes or Equity Interests in any Debtor, (c) any Claim arising from the Prepetition Equity Agreements, and (d) any Claim for reimbursement, contribution, or indemnification on account of any such Claims.

"Subscription Approval Order" means the order of the Bankruptcy Court that, among other things, confirms the applicability of section 1145 of the Bankruptcy Code to the Rights Offering, which order may be part of the Confirmation Order.

"Subscription Commencement Date" means the date set forth in the Subscription Approval Order for the commencement of the Rights Offering.

"Subscription Expiration Date" means the date set forth in the Subscription Approval Order for the conclusion of the Rights Offering.

"Subscription Record Date" means the date set forth in the Subscription Approval Order as the record date for distribution of Subscription Rights.

"Subscription Rights" means, collectively, the Senior Note Rights and the Subordinated Note Rights.

"Surviving Equity Interests" means all Equity Interests that are not RWHI Equity Interests or RII Equity Interests.

"Unimpaired" means, with respect to any Claim or Equity Interest, such Claim or Equity Interest that is not Impaired.

Section 1.2. *Rules of Interpretation and Computation of Time.*

(a) For purposes of the Plan: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document substantially shall be in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document or exhibit Filed, or to be Filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (iv) unless otherwise specified, all references in the Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to the Plan; (v) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vi) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (viii) any term used in capitalized form in the Plan that is not defined in the Plan but is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (ix) with respect to any consent required hereunder from any of the Informal Committee, the Steering Committee, the Plan Support Parties, the Requisite Plan Support Parties, the Requisite Senior Note Plan Support Parties, the Requisite Subordinated Note Plan Support Parties, the Committed Purchasers, the Requisite Committed Purchasers, the Requisite Senior Note Committed Purchasers or the Requisite Subordinated Note Committed Purchasers, or any combination thereof, the Debtors shall be permitted to rely solely on the written representation (including by electronic mail) of the legal counsel to the Informal Committee as to whether such consent has been obtained.

(b) In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II

## UNCLASSIFIED CLAIMS

Section 2.1. *Administrative Claims.*

Each Holder of an Allowed Administrative Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Administrative Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Administrative Claim becomes Allowed, (c) the date on which such Administrative Claim becomes due and payable and (d) such other date as mutually may be agreed to by such Holder, the Steering Committee and the Debtors. Notwithstanding the foregoing, any Allowed Administrative Claim based on a liability incurred by a Debtor in the ordinary course of business during the Chapter 11 Cases may be paid in the ordinary course of business in accordance with the terms and conditions of any agreement relating thereto.

Section 2.2. *Priority Tax Claims.*

Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction and discharge thereof, Cash equal to the unpaid amount of such Allowed Priority Tax Claim (except to the extent that such Holder agrees to less favorable treatment thereof) either on, or as soon as practicable after, the latest of (a) the Effective Date, (b) the date on which such Priority Tax Claim becomes Allowed, (c) the date on which such Priority Tax Claim becomes due and payable and (d) such other date as mutually may be agreed to by and among such Holder, the Steering Committee and the Debtors; *provided, however*, that the Debtors shall be authorized, at their option, and in lieu of payment in full of an Allowed Priority Tax Claim, to make deferred Cash payments on account thereof in the manner and to the extent permitted under section 1129(a)(9)(C) of the Bankruptcy Code.

Section 2.3. *Professional Fees.*

(a) Each Professional requesting compensation pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code for services rendered in connection with the Chapter 11 Cases prior to the Confirmation Date shall File an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases on or before the sixtieth day following the Effective Date. Without limiting the foregoing, any Debtor or Reorganized Debtor, as the case may be, may pay the charges incurred by the Debtors on and after the Confirmation Date for any Professional's fees disbursements, expenses or related support services, without application to or approval by the Bankruptcy Court.

(b) Notwithstanding Section 2.3(a), all reasonable fees and expenses of the Committee Professionals that are incurred in connection with the Chapter 11 Cases (whether incurred before or after the Petition Date, but no later than the Effective Date) shall be deemed to be Allowed Administrative Claims for purposes hereof.

Section 2.4. *Prepetition Indenture Trustee Fees and Expenses.*

The Prepetition Indenture Trustees have provided and will continue to provide necessary services under the Prepetition Indentures prior to and after the Petition Date. On, or as soon as practicable after, the Effective Date, the Debtors shall pay all reasonable fees, costs and expenses incurred by the Prepetition Indenture Trustees in the performance of their duties (including, but not limited to, the reasonable fees, costs and expenses incurred by the Prepetition Indenture Trustees' professionals) prior to the Effective Date, provided (a) such fees, costs and expenses are reimbursable under the terms of the applicable Prepetition Indentures and (b) any dispute in connection with such fees, costs and expenses has been resolved by Final Order. The Reorganized Debtors shall pay all reasonable fees, costs and expenses incurred by any Prepetition Indenture Trustee after the Effective Date in connection with the distributions required pursuant to Section 6.2 or the implementation of any provisions of the Plan (including, but not limited to, the reasonable fees, costs and expenses incurred by the Prepetition Indenture Trustees' professionals). Any dispute regarding the obligations of the Debtors or the Reorganized Debtors with respect to the payment of the reasonable fees, costs and expenses of the Prepetition Indenture Trustees shall be resolved by the Bankruptcy Court. Distributions received by the Holders of Allowed Floating Rate Secured Note Claims, Allowed Senior Note Claims and Allowed Subordinated Note Claims, pursuant to the Plan, shall not be reduced on account of the payment of the Prepetition Indenture Trustees' fees, costs and expenses pursuant to the terms of the Plan.

Section 2.5. *Claims Under DIP Credit Agreement.*

All amounts outstanding under the DIP Credit Agreement shall be paid in full in Cash on the Effective Date, or as otherwise provided in the DIP Credit Agreement, the Confirmation Order, or the Exit Facility Documents.

## ARTICLE III

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

Section 3.1. *Classification.*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including for purposes of voting, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that such Claim or Equity Interest qualifies within the description of such Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest has not been paid or otherwise settled prior to the Effective Date. Intercompany Claims are not classified herein, and shall be reinstated pursuant to section 1124(2) of the Bankruptcy Code such that such Claims are rendered Unimpaired. RII Equity Interests and Surviving Equity Interests are not classified herein. All RII Equity Interests shall be cancelled, extinguished and discharged on the Effective

Date, and all Surviving Equity Interests shall remain outstanding on and after the Effective Date, subject to the terms hereof.

Claims (except for Administrative Claims and Priority Tax Claims, which are not required to be classified pursuant to section 1123(a)(1) of the Bankruptcy Code) are classified as follows:

  (a)    Class 1—Secured Credit Agreement Claims

  (b)    Class 2—Floating Rate Secured Note Claims

  (c)    Class 3—Other Secured Claims

  (d)    Class 4—Other Priority Claims

  (e)    Class 5—General Unsecured Claims

  (f)    Class 6—Senior Note Claims

  (g)    Class 7—Subordinated Note Claims

  (h)    Class 8—Subordinated Securities Claims

  (i)    Class 9—RWHI Equity Interests

In the event that no Secured Credit Agreement Claim exists as of the date of commencement of the Confirmation Hearing, Class 1 shall be deemed to have been deleted from the Plan for all purposes, including for purposes of (a) determining whether such Class has accepted or rejected the Plan under section 1129(a)(8) of the Bankruptcy Code and (b) distributions to be made under the Plan.

Section 3.2. *Treatment and Voting Rights of Claims and Equity Interests.*

  (a) *Class 1—Secured Credit Agreement Claims.*

    (i)    *Treatment:* On, or as soon as practicable after, the Effective Date, each Holder of an Allowed Secured Credit Agreement Claim shall receive Cash in an amount equal to the principal, interest and any other amounts that may be owed in respect of such Claim, so as to leave unaltered the legal, equitable and contractual rights to which such Claim entitles such Holder.

    (ii)   *Voting:* Class 1 is Unimpaired. Holders of Secured Credit Agreement Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(b) *Class 2—Floating Rate Secured Note Claims.*

    (i)   *Treatment:* On, or as soon as practicable after, the Effective Date, each Holder of an Allowed Floating Rate Secured Note Claim shall receive Cash in an amount equal to the principal, interest and any other amounts that may be owed in respect of such Claim, so as to leave unaltered the legal, equitable and contractual rights to which such Claim entitles such Holder.

    (ii)   *Voting*: Class 2 is Unimpaired. Holders of Floating Rate Secured Note Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(c) *Class 3—Other Secured Claims.*

    (i)   *Treatment:* Each Holder of an Allowed Other Secured Claim shall have such Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code such that such Claim is rendered Unimpaired, except to the extent that such Holder agrees to less favorable treatment thereof. The failure of the Debtors or any other party in interest (including the Steering Committee) to File an objection, prior to the Effective Date, with respect to any Other Secured Claim that is reinstated hereunder shall be without prejudice to the rights of the Reorganized Debtors or any other party in interest (including the Steering Committee) to contest or otherwise defend against such Claim in an appropriate forum (including the Bankruptcy Court, if applicable, in accordance with Article X of the Plan) when and if such Claim is sought to be enforced. Any cure amount that the Debtors may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated Other Secured Claim shall be paid on, or as soon as practicable after, the latest of (x) the Effective Date, (y) the date on which such Other Secured Claim becomes Allowed, or (z) such other date as mutually may be agreed to by and among such Holder, the Steering Committee and the Debtors.

    (ii)   *Voting*: Class 3 is Unimpaired. Holders of Other Secured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(d) *Class 4—Other Priority Claims.*

    (i)   *Treatment*: Each Holder of an Allowed Other Priority Claim shall receive Cash in an amount sufficient to leave unaltered the legal, equitable and contractual rights to which such Claim entitles such Holder, on or as soon as practicable after, the latest of (w) the Effective Date, (x) the date on which such Other Priority Claim becomes Allowed, (y) the date on which

such Other Priority Claim otherwise is due and payable, and (z) such other date as mutually may be agreed to by and among such Holder, the Steering Committee and the Debtors.

    (ii)    *Voting*: Class 4 is Unimpaired. Holders of Other Priority Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(e) *Class 5—General Unsecured Claims.*

    (i)    *Treatment*: Each Holder of an Allowed General Unsecured Claim shall have such Claim reinstated pursuant to section 1124(2) of the Bankruptcy Code such that such Claim is rendered Unimpaired, except to the extent that such Holder agrees to less favorable treatment thereof. The failure of the Debtors or any other party in interest (including the Steering Committee) to File an objection, prior to the Effective Date, with respect to any General Unsecured Claim that is reinstated hereunder shall be without prejudice to the rights of the Reorganized Debtors or any other party in interest (including the Steering Committee) to contest or otherwise defend against such Claim in an appropriate forum (including the Bankruptcy Court, if applicable, in accordance with Article X of the Plan) when and if such Claim is sought to be enforced. Any cure amount that the Debtors may be required to pay pursuant to section 1124(2) of the Bankruptcy Code on account of any such reinstated General Unsecured Claim shall be paid on, or as soon as practicable after, the latest of (x) the Effective Date, (y) the date on which such General Unsecured Claim becomes Allowed, or (z) such other date as mutually may be agreed to by and among such Holder, the Steering Committee and the Debtors.

    (ii)    *Voting*: Class 5 is Unimpaired. Holders of General Unsecured Claims are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(f) *Class 6—Senior Note Claims.*

    (i)    *Treatment*: Each Holder of an Allowed Senior Note Claim shall receive, in full satisfaction and discharge thereof: (A) on the Subscription Commencement Date, its Pro-Rata Share of Senior Note Rights; and (B) on, or as soon as practicable after, the Effective Date, its Pro-Rata Share of (x) the New Third-Lien Notes, (y) the Senior Note Cash and (z) the Senior Note Preferred Shares.

    (ii)    *Allowance*: The Senior Note Claims shall be deemed Allowed, in the aggregate, in the sum of (A) the Senior Note Principal Amount (and the

accrued and unpaid non-default rate interest thereon through the Effective Date) *plus* (B) the amount of the Consent Fee.

    (iii) *Voting*: Class 6 is Impaired. Holders of Allowed Senior Note Claims are entitled to vote to accept or reject the Plan.

(g) *Class 7—Subordinated Note Claims.*

    (i) *Treatment*: Each Holder of an Allowed Subordinated Note Claim shall receive, in full satisfaction and discharge thereof: (A) on the Subscription Commencement Date, its Pro-Rata Share of Subordinated Note Rights; and (B) on, or as soon as practicable after, the Effective Date, its Pro-Rata Share of Available Reorganized RII Common Stock.

    (ii) *Allowance*: The Subordinated Note Claims shall be deemed Allowed in the aggregate principal amount of $315 million (and the accrued and unpaid non-default rate interest thereon through the Petition Date).

    (iii) *Voting*: Class 7 is Impaired. Holders of Allowed Subordinated Note Claims are entitled to vote to accept or reject the Plan.

(h) *Class 8—Subordinated Securities Claims.*

    (i) *Treatment*: No Holder of a Subordinated Securities Claim shall be entitled to, nor shall it receive or retain, any property or interest in property on account of such Subordinated Securities Claim. On the Effective Date, all Subordinated Securities Claims shall be cancelled, extinguished and discharged.

    (ii) *Voting*: Class 8 is Impaired. Holders of Subordinated Securities Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

(i) *Class 9—RWHI Equity Interests.*

    (i) *Treatment*: No Holder of RWHI Equity Interests shall be entitled to, nor shall it receive or retain, any property or interest in property on account of such RWHI Equity Interests. On the Effective Date, all RWHI Equity Interests shall be cancelled, extinguished and discharged.

    (ii) *Voting*: Class 9 is Impaired. Holders of RWHI Equity Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, and, therefore, are not entitled to vote to accept or reject the Plan.

Section 3.3. *Cram Down.*

If any Class of Claims or Equity Interests entitled to vote on the Plan shall not vote to accept the Plan, the Debtors shall, with the consent of the Requisite Senior Note Committed Purchasers, the Requisite Subordinated Note Committed Purchasers, the Requisite Committed Purchasers and the Steering Committee, (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with Section 8.4 hereof. With respect to any Class of Claims or Equity Interests that is deemed to reject the Plan, the Debtors shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

# ARTICLE IV

# MEANS FOR IMPLEMENTATION OF THE PLAN

Section 4.1. *Compromise of Controversies.*

In consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all Claims and controversies resolved under the Plan, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Rule 9019.

Section 4.2. *Guarantees.*

On the Effective Date, all guarantees by any Debtor of the payment, performance, or collection of another Debtor with respect to the Claims specified in Class 1, Class 2, Class 6 and Class 7 shall be forever discharged, eliminated, cancelled and of no further force and effect.

Section 4.3. *Vesting of Assets.*

Except as otherwise provided in the Plan or in any Plan Document, on the Effective Date, title to all Assets of any Debtor shall vest in such Reorganized Debtor, free and clear of all Claims, liens, encumbrances and other interests.

Section 4.4. *Continued Corporate Existence.*

Except as otherwise provided in Sections 4.14 and 4.15, each of the Debtors, as Reorganized Debtors, shall continue to exist on and after the Effective Date as a separate legal entity with all of the powers available to such legal entity under applicable law and pursuant to the applicable New Constituent Documents, without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) in accordance with such applicable law. On and after the occurrence of the Effective Date, the Reorganized Debtors shall be authorized to operate their respective businesses, and to use, acquire or dispose of Assets without supervision or approval by the Bankruptcy Court, and free from any restrictions of the Bankruptcy Code or the Bankruptcy Rules.

Section 4.5. *Cancellation of Notes, Instruments, Debentures and Equity Interests.*

So long as the treatments provided for in, and the distributions contemplated by, Article III are effectuated or made, upon the Effective Date, each of (a) the Floating Rate Secured Notes, (b) the Senior Notes, (c) the Subordinated Notes, (d) the Prepetition Indentures, (e) the RWHI Equity Interests, (f) the RII Equity Interests, and (g) any other notes, bonds, indentures, certificates or other instruments or documents evidencing or creating any Claims or Equity Interests that are Impaired hereunder, shall be cancelled and deemed terminated, and shall represent only the right to receive the distributions, if any, to which the Holders thereof are entitled under the Plan; *provided, however,* that the provisions of the Prepetition Indentures granting the Prepetition Indenture Trustees charging liens or other rights against distributions payable to holders of the Prepetition Notes, to the extent that the Prepetition Indenture Trustees do not receive payments of their fees, costs and expenses payable pursuant to Section 2.4, shall survive the cancellation of the Prepetition Indentures and remain in full force and effect. Except as otherwise provided in Section 6.2, as of the Effective Date, the Prepetition Indenture Trustees shall have no further obligations under their respective Prepetition Indentures.

Section 4.6. *Cancellation of Liens.*

Upon the Effective Date, any Lien securing any Secured Claim (other than a Lien with respect to a Claim that is reinstated pursuant to Section 3.2(c)) shall be deemed released, and the Holder of such Secured Claim shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral) held by such Holder and to take such actions as may be requested by the Debtors (or the Reorganized Debtors, as the case may be) to evidence the release of such Lien, including the execution, delivery and filing or recording of such releases as may be requested by the Debtors (or the Reorganized Debtors, as the case may be).

Section 4.7. *New Constituent Documents.*

On, or as soon as practicable after, the Effective Date, the Reorganized Debtors shall, in consultation with the Steering Committee, (a) make any and all filings that may be required in connection with the New Constituent Documents with the appropriate governmental offices and/or agencies and (b) take any and all other actions that may be required to render the New Constituent Documents effective.

Section 4.8. *New Officers, New Employment Agreements.*

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each of the New Officers (and, to the extent such Person is an insider, the nature of any compensation for such Person) shall be disclosed in the Plan Supplement. The New Employment Agreements shall supersede any and all other employment agreements by and between the Debtors and the New Employment Agreement Officers.

Section 4.9. *Directors of the Reorganized Debtors.*

(a) *Initial Reorganized RII Board of Directors.* Pursuant to section 1129(a)(5) of the Bankruptcy Code, the identity and affiliations of each proposed member of the initial

Reorganized RII Board of Directors (and, to the extent such Person is an insider, the nature of any compensation for such Person) shall be disclosed in the Plan Supplement. The initial Reorganized RII Board of Directors shall consist of seven directors, (i) two of whom shall be designated by the members of the Steering Committee who are Holders of Subordinated Note Claims (based upon the holdings of such Holders), (ii) one of whom shall be designated by the Senior Note Committed Purchasers, (iii) three of whom shall be designated by the Requisite Subordinated Note Committed Purchasers, and (iv) one of whom shall be the initial chief executive officer of Reorganized RII. Each member of the initial Reorganized RII Board of Directors (other than the initial chief executive officer of Reorganized RII) shall assume such position on the day immediately following the Effective Date. Any subsequent Reorganized RII Board of Directors shall be elected, classified, and composed in a manner consistent with the Reorganized RII New Constituent Documents and applicable non-bankruptcy law.

(b) *Initial Reorganized Subsidiary Debtors' Boards of Directors.* The proposed members of each of the initial Reorganized Subsidiary Debtors' Boards of Directors shall be disclosed in the Plan Supplement. The classification and composition of each Reorganized Subsidiary Debtor's Board of Directors shall be consistent with the applicable New Constituent Documents and applicable non-bankruptcy law, and shall be subject to the reasonable consent of the Steering Committee and the Requisite Plan Support Parties.

Section 4.10. *Corporate Action.*

Upon the Effective Date, by virtue of the solicitation of votes in favor of the Plan and entry of the Confirmation Order, all actions contemplated by the Plan shall be deemed authorized and approved in all respects, including (a) the adoption of the New Constituent Documents and the New Management Incentive Plan, (b) the selection of the directors and officers for the Reorganized Debtors, (c) the execution of and entry into the New Employment Agreements and the Exit Facility Documents, (d) the issuance of the New Third-Lien Notes, (e) the issuance of the Reorganized RII Common Stock, (f) the issuance of the Reorganized RII Preferred Stock, (g) the execution of and entry into the Registration Rights Agreement and (h) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors or the Reorganized Debtors in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtors or the Reorganized Debtors. Upon the Effective Date, the appropriate officers of the Reorganized Debtors and members of the boards of directors of the Reorganized Debtors shall be authorized and directed to issue, execute and deliver the agreements, documents, securities and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtors, including (i) the Exit Facility Documents, (ii) the New Third-Lien Note Indenture, (iii) the Registration Rights Agreement and (iv) any and all other agreements, documents, securities and instruments relating to the foregoing. The authorizations and approvals contemplated in this Section 4.10 shall be effective notwithstanding any requirements under any applicable non-bankruptcy law. The issuance of shares of Reorganized RII Common Stock and Reorganized RII Preferred Stock shall be exempt from the requirements of section 16(b) of the Exchange Act (pursuant to rule 16b-3 promulgated

thereunder) with respect to any acquisition of such securities by an officer or director (or a director by deputization for purposes thereof) as of the Effective Date.

Section 4.11. *Rights Offering.*

(a) *The Senior Note Rights.* Each Holder, as of the Subscription Record Date, of an Allowed Senior Note Claim shall be permitted, but not obligated, to participate in the Rights Offering entitling such Holder to subscribe for all or a portion of its Pro-Rata Share (determined as of the Subscription Record Date) of the Senior Note Rights. Any Holder of an Allowed Senior Note Claim that subscribes for its Pro-Rata Share of Reorganized RII Series A Preferred Stock also may oversubscribe (on a pro-rata basis) to exercise any Senior Note Rights not subscribed for by other Holders of Allowed Senior Note Claims. To the extent that any Senior Note Rights remain unexercised after the Subscription Expiration Date, such Senior Note Rights shall be deemed null and void and have no further value. Pursuant to the Backstop Commitment Agreement, the Senior Note Committed Purchasers have committed to purchase, in the aggregate, up to 25,000 shares of Reorganized RII Series A Preferred Stock that are not otherwise subscribed for in the Rights Offering, on the terms and conditions set forth in the Backstop Commitment Agreement. The Debtors and the Steering Committee will collaborate to devise a mechanism whereby any Holder of Allowed Senior Note Claims that elects to participate in the Rights Offering will be able to apply all or any portion of the Senior Note Cash that such Holder is entitled to receive hereunder towards the payment required in connection with the exercise of such Holder's Senior Note Rights. In addition, any Senior Note Committed Purchaser that is required to purchase any shares of Reorganized RII Series A Preferred Stock pursuant to the Backstop Commitment Agreement shall be permitted to apply all or any portion of its pro-rata share of the Senior Note Backstop Fee towards the payment required in connection with such purchase.

(b) *The Subordinated Note Rights.* Each Holder, as of the Subscription Record Date, of an Allowed Subordinated Note Claim shall be permitted, but not obligated, to participate in the Rights Offering entitling such Holder to subscribe for all or a portion of its Pro-Rata Share (determined as of the Subscription Record Date) of the Subordinated Note Rights. Any Holder of an Allowed Subordinated Note Claim that subscribes for its Pro-Rata Share of Reorganized RII Series B Preferred Stock also may oversubscribe (on a pro-rata basis) to exercise any Subordinated Note Rights not otherwise subscribed for by other Holders of Allowed Subordinated Note Claims. To the extent that any Subordinated Note Rights remain unexercised after the Subscription Expiration Date, such Subordinated Note Rights shall be deemed null and void and have no further value. Pursuant to the Backstop Commitment Agreement, the Subordinated Note Committed Purchasers have committed to purchase, in the aggregate, up to 60,000 shares of Reorganized RII Series B Preferred Stock not subscribed for in the Rights Offering, on the terms and conditions set forth in the Backstop Commitment Agreement. Any Subordinated Note Committed Purchaser that is required to purchase any such shares of Reorganized RII Series B Preferred Stock pursuant to the Backstop Commitment Agreement shall be permitted to apply all or any portion of its pro-rata share of the Subordinated Note Backstop Fee towards the payment required in connection with such purchase.

(c) *Administration of Rights Offering.* The Rights Offering shall be administered as set forth in the Subscription Approval Order.

Section 4.12. *CVC Settlement Agreement.*

The transactions contemplated by the CVC Settlement Agreement shall be implemented on the Effective Date, subject to the terms and conditions hereof and thereof.

Section 4.13. *Sources of Cash for Plan Distribution.*

Except as otherwise provided in the Plan or Confirmation Order, all Cash required for the payments to be made hereunder shall be obtained from the Debtors' and the Reorganized Debtors' operations and Cash balances, the Exit Facility and the Rights Offering.

Section 4.14. *Dissolution of RWHI.*

Any and all assets and liabilities of RWHI shall be transferred to (or assumed by, as applicable) RII on the Effective Date, and immediately thereafter, RWHI shall be dissolved, and the Reorganized Debtors shall (a) make any and all filings that may be required in connection with such dissolution with the appropriate governmental offices and/or agencies and (b) take any and all other actions that may be required to render such dissolution effective.

Section 4.15. *Restructuring Transactions.*

From the Confirmation Date through the Effective Date, the Debtors, subject to the reasonable consent of the Requisite Committed Purchasers, the Requisite Plan Support Parties and the Steering Committee, shall be authorized to enter into such transactions and take such other actions as may be necessary or appropriate to effect a corporate restructuring of their businesses, to otherwise simplify the overall corporate structure of the Debtors, or to reincorporate certain of the Debtors under the laws of jurisdictions other than the laws of which such Debtors currently are incorporated, which restructuring may include one or more mergers, consolidations, dispositions, liquidations or dissolutions, as may be determined by the Debtors (subject to the reasonable consent of the Requisite Committed Purchasers, the Requisite Plan Support Parties and the Steering Committee) to be necessary or appropriate (collectively, the "Restructuring Transactions"). In effecting the Restructuring Transactions, the Debtors shall be permitted to (a) execute and deliver appropriate agreements or other documents of merger, consolidation, restructuring, disposition, liquidation or dissolution containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable state law and such other terms to which the applicable entities may agree, (b) execute and deliver appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, duty or obligation on terms consistent with the terms of the Plan and having such other terms to which the applicable entities may agree, (c) file appropriate certificates or articles of merger, consolidation or dissolution pursuant to applicable state law and (d) take all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable state law in connection with such transactions. The Restructuring Transactions may include one or more mergers, consolidations, restructurings, dispositions, liquidations or dissolutions as may be determined by the Debtors, the Requisite Committed Purchasers, the Requisite Plan Support Parties and the Steering Committee to be necessary or appropriate to result in substantially all of the respective assets, properties, rights, liabilities, duties and obligations of certain of the Debtors vesting in one or more

surviving, resulting or acquiring corporations. In each case in which the surviving, resulting or acquiring corporation in any such transaction is a successor to a Debtor, such surviving, resulting or acquiring corporation will perform the obligations of such Debtor pursuant to the Plan to pay or otherwise satisfy the Allowed Claims against such Debtor, except as provided in any contract, instrument or other agreement or document effecting a disposition to such surviving, resulting or acquiring corporation, which may provide that another Debtor will perform such obligations.

Section 4.16. *Registration Rights.*

On, or as soon as practicable after, the Effective Date, Reorganized RII shall enter into the Registration Rights Agreement with each Plan Support Party and any recipient of shares of Available Reorganized RII Common Stock that, prior to the Effective Date, notifies the Debtors and counsel to the Informal Committee, in writing, that such Person desires to be a party thereto.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 5.1. *Assumption of Executory Contracts and Unexpired Leases.*

(a) All executory contracts and unexpired leases of the Debtors (including the GM Agreements, the CVC Settlement Agreement and the engagement letters relating to the Committee Professionals) that are not (i) rejected by the Debtors prior to the Effective Date, (ii) subject to a motion seeking such rejection as of the Effective Date, or (iii) identified in the Plan Supplement as executory contracts or unexpired leases for which the Debtors expressly reserve the right to seek to reject, shall be deemed to have been assumed by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code without further notice or order of the Bankruptcy Court. Each executory contract and unexpired lease assumed pursuant to this Article V shall revest in, and be fully enforceable by, the Reorganized Debtors in accordance with the terms thereof, except as otherwise modified by the provisions of the Plan, or by any order of the Bankruptcy Court.

(b) Any monetary amount by which any executory contract or unexpired lease to be assumed pursuant to the Plan is in default shall be satisfied, in accordance with section 365(b)(1) of the Bankruptcy Code, by payment of such amount in Cash, on the Effective Date, or upon such other terms as the parties to such executory contract or unexpired lease may otherwise agree. In the event of a dispute regarding (i) the amount of any cure payments required under section 365(b)(1) of the Bankruptcy Code, (ii) the ability of any Reorganized Debtor or any assignee thereof to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed, or (iii) any other matter pertaining to assumption under section 365 of the Bankruptcy Code, the cure payments required under section 365(b)(1) of the Bankruptcy Code, if any, shall be made following the entry of a Final Order resolving such dispute.

Section 5.2. *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases, if any, must be Filed within thirty (30) days after the date of entry

of an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease for which proof of such Claim is not Filed within such time period shall forever be barred from assertion against the Debtors or the Reorganized Debtors, the Estates and their property, unless otherwise ordered by the Bankruptcy Court. Any Allowed Claim arising from the rejection of executory contracts or unexpired leases for which proof of such Claim timely has been Filed shall be, and shall be treated as, an Allowed General Unsecured Claim under the terms hereof, subject to any limitation under section 502(b) of the Bankruptcy Code or otherwise.

Section 5.3. *Indemnification of Directors, Officers and Employees.*

Any obligations or rights of the Debtors or Reorganized Debtors to defend, indemnify, reimburse, or limit the liability of Covered Persons pursuant to any applicable certificates of incorporation, by-laws, policy of providing employee indemnification, state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtors prior to the Effective Date, shall be treated as if they were executory contracts that are assumed under the Plan and shall survive the Effective Date and remain unaffected hereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability is owed in connection with an occurrence before or after the Petition Date.

Section 5.4. *Compensation and Benefit Programs.*

Other than with respect to the New Employment Agreement Officers, all duly-authorized and validly-existing employment and severance policies, and compensation and benefit plans, policies and programs of the Debtors applicable to their employees, retirees and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, and life, accidental death and dismemberment insurance plans, shall be deemed to be, and treated, as executory contracts and, on the Effective Date, shall be assumed pursuant to sections 365 and 1123 of the Bankruptcy Code.

Section 5.5. *Termination of Advisory Agreement and Prepetition Equity Agreements.*

(a) Upon the Effective Date, the Advisory Agreement shall be deemed terminated and of no further force and effect, and no amount (accrued or otherwise) owed in respect thereof shall be payable to Court Square, or otherwise qualify for treatment as an Allowed Claim hereunder.

(b) Upon the Effective Date, each Prepetition Equity Agreement shall be deemed terminated and of no further force and effect, and any Claim in respect thereof shall be treated as a Subordinated Securities Claim hereunder.

# ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

Section 6.1. *Date of Distributions.*

Except as otherwise provided in the Plan, any distribution to be made hereunder shall be made on the Effective Date, or as soon as practicable thereafter. Any payment or act required to be made or done hereunder on a day that is not a Business Day shall be made on the next succeeding Business Day.

Section 6.2. *Disbursing Agent.*

(a) *General.* Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Reorganized Debtors, as Disbursing Agent. The Reorganized Debtors shall be permitted, without further order of the Bankruptcy Court, to employ or contract with any Entities to assist in or make the distributions required hereunder.

(b) *Prepetition Agent.* The Prepetition Agent shall be deemed to be the Holder of all Secured Credit Agreement Claims for purposes of distributions to be made hereunder, and all distributions on account of Allowed Secured Credit Agreement Claims shall be made to the Prepetition Agent. The Prepetition Agent shall hold such distributions for the benefit of the Holders of Allowed Secured Credit Agreement Claims, and, as soon as practicable following such Holders' compliance with the requirements set forth in Section 6.6, shall deliver such distributions to such Holders.

(c) *Floating Rate Secured Note Indenture Trustee.* The Floating Rate Secured Note Indenture Trustee shall be deemed to be the Holder of all Floating Rate Secured Note Claims for purposes of distributions to be made hereunder, and all distributions on account of Allowed Floating Rate Secured Note Claims shall be made to the Floating Rate Secured Note Indenture Trustee. The Floating Rate Secured Note Indenture Trustee shall hold such distributions for the benefit of the Holders of Allowed Floating Rate Secured Note Claims as of the Mandatory Exchange Date, and, as soon as practicable following such Holders' compliance with the requirements set forth in Section 6.6, shall deliver such distributions to such Holders.

(d) *Distribution to the Plan Support Parties and Committed Purchasers.* Notwithstanding the provisions of Section 6.2(e), (f) and (g), in the event that a Committed Purchaser or a Plan Support Party is entitled to receive a distribution pursuant to Section 3.2(f) and/or (g), and has (i) complied with Section 6.6, (ii) complied with any and all procedures as may be required by the applicable Prepetition Indenture Trustee(s) to permit such distribution to be made directly to such Committed Purchaser or Plan Support Party (as opposed to such distribution being made through the applicable Prepetition Indenture Trustee(s) or in any other manner as provided for under Section 6.2(e), (f) or (g)), and (iii) provided, prior to the Effective Date, written evidence to the Debtors that such Committed Purchaser or Plan Support Party has complied with the procedures set forth in (ii) above (which evidence is in form and substance satisfactory to the Debtors), the Disbursing Agent shall make such distribution directly to such Committed Purchaser or Plan Support Party.

(e) *Senior Note Indenture Trustee.* Except as provided in Section 6.2(d), the Senior Note Indenture Trustee shall be deemed to be the Holder of all Senior Note Claims for purposes of distributions to be made hereunder, and all distributions on account of Allowed Senior Note Claims shall be made to the Senior Note Indenture Trustee (or in accordance with the instructions provided by the Senior Note Indenture Trustee). The Senior Note Indenture Trustee (or the recipient of such distributions pursuant to any instructions provided by the Senior Note Indenture Trustee) shall hold all distributions of the New Third-Lien Notes and the Senior Note Cash for the benefit of the Holders of Allowed Senior Note Claims as of the Mandatory Exchange Date, and, as soon as practicable following such Holders' compliance with the requirements set forth in Section 6.6, shall deliver such distributions to such Holders.

(f) *9⅜% Subordinated Note Indenture Trustee.* Except as provided in Section 6.2(d), the 9⅜% Subordinated Note Indenture Trustee shall be deemed to be the Holder of all 9⅜% Subordinated Note Claims for purposes of distributions to be made hereunder, and all distributions on account of Allowed 9⅜% Subordinated Note Claims shall be made to the 9⅜% Subordinated Note Indenture Trustee (or in accordance with the instructions provided by the 9⅜% Subordinated Note Indenture Trustee). The 9⅜% Subordinated Note Indenture Trustee (or the recipient of such distributions pursuant to any instructions provided by the 9⅜% Subordinated Note Indenture Trustee) shall hold all distributions of Available Reorganized RII Common Stock for the benefit of the Holders of Allowed 9⅜% Subordinated Note Claims as of the Mandatory Exchange Date, and, as soon as practicable following such Holders' compliance with the requirements set forth in Section 6.6, shall deliver such distributions to such Holders.

(g) *11% Subordinated Note Indenture Trustee.* Except as provided in Section 6.2(d), the 11% Subordinated Note Indenture Trustee shall be deemed to be the Holder of all 11% Subordinated Note Claims for purposes of distributions to be made hereunder, and all distributions on account of Allowed 11% Subordinated Note Claims shall be made to the 11% Subordinated Note Indenture Trustee (or in accordance with the instructions provided by the 11% Subordinated Note Indenture Trustee). The 11% Subordinated Note Indenture Trustee (or the recipient of such distributions pursuant to any instructions provided by the 11% Subordinated Note Indenture Trustee) shall hold all distributions of Available Reorganized RII Common Stock for the benefit of the Holders of Allowed 11% Subordinated Note Claims as of the Mandatory Exchange Date, and, as soon as practicable following such Holders' compliance with the requirements set forth in Section 6.6, shall deliver such distributions to such Holders.

Section 6.3. *Mandatory Exchange Date.*

As of the Mandatory Exchange Date relating to any Prepetition Indenture, the transfer register for such Prepetition Indenture shall be closed and the transfer of the Prepetition Notes issued thereunder, or any interest therein, shall be prohibited. Neither the Disbursing Agent nor the Prepetition Indenture Trustee under such Prepetition Indenture shall have any obligation to recognize the transfer or sale of, or any participation in, any Allowed Claims relating to such Prepetition Indenture that occurs after such Mandatory Exchange Date, and shall be entitled for all purposes herein to recognize and make distributions only to Holders of such Claims as of the Mandatory Exchange Date.

Section 6.4. *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

(a) *General.* Any distribution to be made hereunder to a Holder of an Allowed Claim shall be made to the address of such Holder as set forth in the books and records of the Debtors or their agents, or in a letter of transmittal, unless the Debtors have been notified in writing of a change of address, including by the Filing of a proof of claim by such Holder that contains an address for such Holder that is different from the address reflected on such books and records or letter of transmittal.

(b) *Undeliverable Distributions.* In the event that any distribution or notice provided in connection with the Chapter 11 Cases to any Holder of an Allowed Claim is returned to the Disbursing Agent as undeliverable or otherwise is unclaimed, the Disbursing Agent shall make no further distribution to such Holder unless and until such Disbursing Agent is notified in writing of such Holder's then current address. On, or as soon as practicable after, the date on which a previously undeliverable or unclaimed distribution becomes deliverable and claimed, the Disbursing Agent shall make such distribution without interest thereon. Any Holder of an Allowed Claim that fails to assert a Claim hereunder for an undeliverable or unclaimed distribution within one year after the Effective Date shall be deemed to have forfeited its Claim for such undeliverable or unclaimed distribution and shall forever be barred and enjoined from asserting such Claim against any of the Debtors, the Estates, or the Reorganized Debtors or their property. Any Cash amounts in respect of undeliverable or unclaimed distributions for which a Claim is not made within such one-year period shall be forfeited to the Reorganized Debtors. Any securities issued by the Debtors in respect of undeliverable or unclaimed distributions for which a Claim is not made within such one-year period shall be cancelled and extinguished. Nothing contained herein shall require, or be construed to require, the Disbursing Agent to attempt to locate any Holder of an Allowed Claim.

Section 6.5. *Setoff and Recoupment.*

The Reorganized Debtors shall be permitted, but not required, to set off against any Claim (other than the Secured Credit Agreement Claims, the Floating Rate Secured Note Claims, the Senior Note Claims, the 9⅜% Subordinated Note Claims and the 11% Subordinated Note Claims, which Claims shall not be subject to setoff, recoupment or reduction of any kind), or the distributions to be made hereunder on account of such Claim, any claims of any nature whatsoever the Debtors have against the Holder of such Claim; *provided, however,* that neither the failure to exercise such setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claim the Reorganized Debtors may have against such Holder.

Section 6.6. *Surrender of Cancelled Instruments or Securities.*

(a) Any Holder of any Claim evidenced by the instruments, securities or other documentation cancelled under Section 4.5 (including the Prepetition Agent and the Prepetition Indenture Trustees) shall surrender such applicable instruments, securities or other documentation to the Reorganized Debtors, in accordance with written instructions to be provided to such Holder by the Reorganized Debtors, unless waived in writing by the Debtors or the Reorganized Debtors. With respect to any global note relating to any Prepetition Indenture

that is held in the name of DTC, DTC shall surrender the applicable instrument to the applicable Prepetition Indenture Trustee, and such Prepetition Indenture Trustee shall surrender such global note to the Reorganized Debtors. Any distribution required to be made hereunder on account of any such Claim shall be treated as an undeliverable distribution under Section 6.4(b) pending the satisfaction of the terms of this Section 6.6(a).

(b) Subject to Section 6.7, any Holder of any Claim evidenced by the instruments, securities or other documentation cancelled under Section 4.5 that fails to surrender such applicable instruments, securities or other documentation in accordance with Section 6.6(a) within two years after the Effective Date shall have such Claim, and the distribution on account of such Claim, discharged, and shall forever be barred from asserting such Claim against any of the Reorganized Debtors or their respective property.

Section 6.7. *Lost, Stolen, Mutilated or Destroyed Debt or Equity Securities.*

In addition to any requirements under any applicable agreement, any Holder of any Claim evidenced by the instruments, securities or other documentation cancelled under Section 4.5 (including the Prepetition Agent and the Prepetition Indenture Trustees), which instruments, securities or other documentation have been lost, stolen, mutilated or destroyed shall, in lieu of surrendering such instruments, securities or other documentation, deliver to the Reorganized Debtors (a) evidence reasonably satisfactory to the Reorganized Debtors and the Steering Committee of such loss, theft, mutilation or destruction and (b) such security or indemnity as may be required by the Reorganized Debtors to hold the Reorganized Debtors harmless from any damages, liabilities or costs incurred in treating such Entity as the Holder of such Allowed Claim. Such Holder shall, upon compliance with this Article VI, be deemed to have surrendered such instruments, securities or other documentation for all purposes hereunder.

Section 6.8. *Fractional Distributions.*

Notwithstanding anything contained herein to the contrary, no distributions of fractional shares or fractions of dollars (whether in the form of Cash or notes) shall be made hereunder on account of Claims in Classes 6 and 7, and for purposes of distribution hereunder on account of such Claims, fractional shares and fractions of dollars (whether in the form of Cash or notes) shall be rounded to the nearest whole unit (with any amount equal to or less than one-half share or one-half dollar, as applicable, to be rounded down).

Section 6.9. *Manner of Payment Under Plan of Reorganization.*

The Disbursing Agent shall be authorized to make any Cash payment required to be made hereunder by check or wire transfer, at its discretion.

Section 6.10. *No Proofs of Claim Required.*

Except as otherwise provided in Sections 2.3 and 5.2, Holders of Claims against the Debtors shall not be required to file proofs of claim.

# ARTICLE VII

## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 7.1. *Prosecution of Objections to Claims.*

On and after the Confirmation Date, the Debtors (or the Reorganized Debtors, as the case may be) shall have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims, and shall be permitted to settle or compromise any Disputed Claim without approval of the Bankruptcy Court, provided that prior to the Effective Date, the Debtors shall in each case obtain the reasonable consent of the Steering Committee.

Section 7.2. *Estimation of Claims.*

The Debtors (or the Reorganized Debtors, as the case may be) and the Steering Committee shall be permitted, at any time, to request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors (or the Reorganized Debtors, as the case may be) or the Steering Committee previously had objected to such Claim or whether the Bankruptcy Court had ruled on such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during any litigation concerning any objection to such Claim, including during the pendency of any appeal relating to such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors (or the Reorganized Debtors, as the case may be), or, prior to the Effective Date, the Steering Committee, may elect to pursue any supplemental proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

Section 7.3. *Payments and Distributions on Disputed Claims.*

Notwithstanding any other provision to the contrary herein, no payments or distributions shall be made hereunder with respect to all or any portion of any Disputed Claim unless and until all objections to such Disputed Claim have been settled, withdrawn, or determined by Final Order, and such Disputed Claim has become an Allowed Claim.

# ARTICLE VIII

## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE

Section 8.1. *Conditions Precedent to Confirmation.*

The Confirmation Order shall not be entered unless and until such Confirmation Order is in form and substance reasonably satisfactory to the Debtors, the Requisite Plan Support Parties, the Requisite Committed Purchasers and the Steering Committee.

Section 8.2. *Conditions Precedent to the Effective Date.*

The Effective Date shall not occur unless and until each of the following conditions has occurred or has been waived in accordance with the terms herein:

(a) the Confirmation Order shall have become a Final Order;

(b) the execution and delivery of (i) the Exit Financing Documents, (ii) the New Third-Lien Note Indenture, (iii) the GM Agreements, (iv) the CVC Settlement Agreement, (v) the Intercreditor and Subordination Agreement and (vi) all other documents and agreements necessary to implement the terms of the Plan;

(c) the proceeds of the Exit Facility shall be made available to the Reorganized Debtors to fund the distributions hereunder;

(d) RII shall have received aggregate Cash proceeds of $85 million from the Rights Offering and/or pursuant to the terms of the Backstop Commitment Agreement, in either case, less any fees payable under the Backstop Commitment Agreement and after taking into account any application of the Senior Note Cash toward the exercise of Senior Note Rights;

(e) to the extent due and payable, the CVC Settlement Amount shall have been paid in accordance with the terms of the CVC Settlement Agreement;

(f) the Reorganized RII Certificate of Incorporation and Reorganized RII Certificates of Designation shall have been duly filed with the Delaware Secretary of State;

(g) all authorizations, consents and approvals determined by the Debtors, the Committed Purchasers or the Steering Committee to be necessary to implement the terms of the Plan shall have been obtained;

(h) the Outside Date shall not have passed, unless waived or extended by the Requisite Plan Support Parties in accordance with the Plan Support Agreement;

(i) each of the Senior Note Backstop Fee and the Subordinated Note Backstop Fee shall have been paid in accordance with the terms of the Backstop Commitment Agreement, unless applied toward the exercise of Subscription Rights in accordance with the terms of the Backstop Commitment Agreement;

(j) the fees and expenses payable under Sections 2.3(b) and 2.4, and applications for which have been submitted to the Debtors, shall have been paid in full;

(k) to the extent that the terms of the Intercreditor and Subordination Agreement differ in any material respect from the form of intercreditor and subordination agreement attached as Exhibit H to the Solicitation and Disclosure Statement, the reasonable consent of the Requisite Senior Note Plan Support Parties with respect to such differing terms shall have been obtained; and

(l) all other actions necessary to implement the terms of the Plan shall have been taken.

Section 8.3. *Waiver of Conditions.*

Any condition set forth in this Article VIII (other than the conditions set forth in Section 8.2(a) and Section 8.2(k)) may be waived, in whole or in part, at any time by the Debtors, with the reasonable consent of the Steering Committee, the Requisite Plan Support Parties and the Requisite Committed Purchasers, without notice or leave or order of the Bankruptcy Court; *provided, however,* that the condition set forth in Section 8.2(e) may be waived only with the prior written consent of Court Square.

Section 8.4. *Modification of Plan.*

The Debtors, with the consent of the Requisite Committed Purchasers, the Requisite Plan Support Parties and the Steering Committee, shall be permitted to amend, supplement or modify the Plan at any time, subject to the restrictions and requirements under section 1127 of the Bankruptcy Code, and except to the extent such amendment, supplement or modification (a) affects a party's right of consent hereunder and such consent has not been obtained or (b) has the effect of altering, amending or modifying the terms of the CVC Settlement Agreement and the prior written consent of Court Square to such amendment, supplement or modification has not been obtained.

Section 8.5. *Effect of Withdrawal or Revocation.*

The Debtors (with the reasonable consent of the Requisite Committed Purchasers, the Requisite Plan Support Parties and the Steering Committee) reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date. If the Plan is so revoked or withdrawn, or if the Effective Date fails to occur, then the Plan shall be deemed null and void in its entirety, and of no force or effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of (a) any Claims or rights of the Informal Committee, the Steering Committee, any Committed Purchaser or any Plan Support Party or (b) any Claim against or Equity Interest in any Debtor or any other Entity, or to prejudice in any manner, in any further proceedings involving any Debtor, the rights of (i) any Debtor or any other Entity or (ii) the Informal Committee, the Steering Committee, any Committed Purchaser or any Plan Support Party.

Section 8.6. *Reservation of Rights.*

Except as otherwise provided in Section 3.2 regarding the distribution of Subscription Rights, the Plan shall have no force or effect unless and until the Confirmation Order is entered. Prior to the Effective Date, none of the Filing of the Plan, any statement or provision contained in the Plan, or action taken by the Debtors with respect to the Plan shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor or any other party with respect to any Claims or Equity Interests or any other matter.

Section 8.7. *Substantial Consummation of Plan.*

Substantial consummation of the Plan under Bankruptcy Code section 1101(2) shall be deemed to occur on the Effective Date.

## ARTICLE IX

## EFFECT OF PLAN CONFIRMATION

Section 9.1. *Binding Effect.*

The Plan shall be binding upon and inure to the benefit of the Debtors, all current and former Holders of Claims and Equity Interests, and their respective successors and assigns, including, but not limited to, the Reorganized Debtors.

Section 9.2. *Discharge of Claims.*

Except as otherwise provided in Article III, upon the Effective Date, all existing Claims and Equity Interests shall be, and shall be deemed to be, discharged and terminated.

Section 9.3. *Releases.*

(a) *Releases By the Debtors.* For good and valuable consideration, the adequacy of which is hereby confirmed, upon the Effective Date, the Debtors and the Reorganized Debtors, in their individual capacities and as debtors in possession, shall be deemed forever to release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities (other than the rights of the Debtors or Reorganized Debtors to enforce the terms of the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or before the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Plan or the Solicitation and Disclosure Statement, and that could have been asserted by or on behalf of the Debtors, the Estates or the Reorganized Debtors against any of the Releasees; *provided, however,* that there shall be no such release, waiver or discharge on account of claims or obligations in respect of (i) any loan, advance or similar payment made by the Debtors or their affiliates to or for the benefit of any Releasee or (ii) any continuing contractual obligation owed by such Releasee to or for the benefit of the Debtors.

(b) *Releases By Holders of Claims.* Upon the Effective Date, each Releasor, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Plan and the Cash and other contracts, instruments, releases, agreements or documents to be delivered in connection with the Plan, shall be deemed forever to release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than the rights to enforce the obligations of the Debtors and the Reorganized Debtors under the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered in connection with the Plan), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or before the Effective Date in

any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, the Plan or the Solicitation and Disclosure Statement against any of the Releasees.

(c) *Release By the Debtors and the CVC Releasors of the CVC Releasees.* If the payment described in Section 8.2(e) hereof is made on the Effective Date and Court Square has duly provided the Confirmation Certificate (and has otherwise complied with the terms of the CVC Settlement Agreement), upon the Effective Date: (i) each Debtor and its successors and assigns and each CVC Releasor and its successors and assigns shall be deemed forever to release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising on or prior to the date hereof, against the CVC Releasees in connection with the acts of the CVC Releasees related to the Debtors, including any claims arising from or related to their ownership, purchase or sale of securities of the Debtors, claims under fraudulent conveyance, avoidance, preference and other similar claims, claims arising from or related to violations of federal securities laws, claims based upon any act or omission related to past service with, for or on behalf of the Debtors, claims related to breaches of fiduciary obligations, and claims under or related to the Advisory Agreement or the Prepetition Equity Agreements; and (ii) to the extent that any Debtor or its successors or assigns or any CVC Releasor or its successors or assigns receive any consideration on account of any claim released hereunder from any of the CVC Releasees, whether asserted by any Debtor or its successors or assigns, by any CVC Releasor or its successors and assigns, or by any other party, the recipients of such consideration hereby assign all of their right, title, and interest in and to such recovery to the CVC Releasees against whom such consideration is recovered, and the CVC Releasees shall be entitled to enforce the provisions of this Section 9.3(c) against any Debtor or Reorganized Debtor or its successors or assigns as third-party beneficiaries; *provided, however,* that in no event shall any CVC Releasee be released under this paragraph from (A) any claim related to or arising from any breach by Court Square of any of its obligations under or representations made in connection with the CVC Settlement Agreement or (B) any claim that has resulted from a criminal act, fraud, gross negligence, or willful misconduct by or of such CVC Releasee. Nothing in this Section 9.3(c) shall be deemed to assert or imply any admission of liability on the part of any CVC Releasee.

(d) *Release By Court Square of the CVC Released Parties.* If the payment described in Section 8.2(e) hereof is made on the Effective Date, and the CVC Released Parties have otherwise complied with the terms of the CVC Settlement Agreement, upon the Effective Date: (i) Court Square and its successors and assigns shall be deemed forever to release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, arising on or prior to the date hereof, against the CVC Released Parties, including any claims related to or arising from their ownership, sale or purchase of securities of the Debtors, claims with respect to fraudulent conveyance, avoidance, preference and other similar claims, any claims arising from or related to violations of federal securities laws, claims based upon any act or omission related to past service with, for or on behalf of the Debtors, claims related to breaches of fiduciary obligations, and claims under or related to the Advisory Agreement and the Prepetition Equity Agreements; and (ii) to the extent that Court Square or its successors or assigns receives any consideration on account of any claim released hereunder from any of the CVC Released Parties, whether asserted

by Court Square or its successors or assigns or by any other party, the recipients of such consideration hereby assign all of their right, title, and interest in and to such recovery to the CVC Released Parties, as appropriate, against whom such consideration is recovered, and the CVC Released Parties shall be entitled to enforce the provisions of this Section 9.3(d) against Court Square or its successors or assigns as third-party beneficiaries; *provided, however,* that in no event shall any CVC Released Party be released under this paragraph from any claim that has resulted from a criminal act, fraud, gross negligence, or willful misconduct by or of such CVC Released Party. Nothing in this Section 9.3(d) shall be deemed to assert or imply any admission of liability on the part of any of the CVC Released Parties.

Section 9.4. *Exculpation and Limitation of Liability.*

None of the Debtors, the Reorganized Debtors or the Releasees shall have or incur any liability to, or be subject to any right of action by, any Holder of a Claim or Equity Interest, or any other party in interest in the Chapter 11 Cases, or any of their respective agents, employees, representatives, financial advisors, attorneys or agents acting in such capacity, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of, the Chapter 11 Cases, formulation, negotiation or implementation of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence, willful misconduct, fraud or criminal conduct as determined by a final order entered by a court of competent jurisdiction. Without limiting the generality of the foregoing, the Debtors, the Reorganized Debtors and the Releasees shall, in all respects, be entitled to rely reasonably upon the advice of counsel with respect to their duties and responsibilities under the Plan.

Section 9.5. *Injunction.*

(a) *General.* All Entities who have held, hold or may hold Claims or Equity Interests (other than the Claims that are reinstated under Section 3.2) and all other parties in interest in the Chapter 11 Cases, along with their respective current and former employees, agents, officers, directors, principals and affiliates, permanently are enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind against the Debtors or the Reorganized Debtors, (ii) enforcing, attaching, collecting or recovering by any manner or means of any judgment, award, decree or order against the Debtors or Reorganized Debtors, (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or Reorganized Debtors, or (iv) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or Reorganized Debtors, on account of such Claims or Equity Interests; *provided, however,* that nothing contained herein shall preclude such Entities from exercising their rights pursuant to and consistent with the terms hereof and the contracts, instruments, releases, indentures and other agreements and documents delivered under or in connection with the Plan.

(b) *Injunction Against Interference With Plan.* Upon entry of the Confirmation Order, all Holders of Claims and Equity Interests and their respective current and former employees, agents, officers, directors, principals and affiliates shall be enjoined from taking any actions to

interfere with the implementation or consummation of the Plan. Each Holder of an Allowed Claim, by accepting distributions pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Section 9.5.

Section 9.6. *Term of Bankruptcy Injunction or Stays.*

All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence as of the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 9.7. *Termination of Subordination Rights and Settlement of Related Claims.*

The classification and manner of satisfying all Claims and Equity Interests under the Plan take into consideration all subordination rights, whether arising by contract or under general principles of equitable subordination, section 510(b) or 510(c) of the Bankruptcy Code, or otherwise. All subordination rights that a Holder of a Claim or Equity Interest may have with respect to any distribution to be made under the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be enjoined permanently. Accordingly, distributions under the Plan to Holders of Allowed Claims will not be subject to payment of a beneficiary of such terminated subordination rights, or to levy, garnishment, attachment or other legal process by a beneficiary of such terminated subordination rights.

Section 9.8. *Preservation of Rights of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and have the exclusive right to enforce, after the Effective Date, any claims, rights and Causes of Action that the Debtors or the Estates may hold against any Entity, including all claims relating to transactions under section 549 of the Bankruptcy Code, all transfers recoverable under section 550 of the Bankruptcy Code, all Causes of Action against any Entity on account of indebtedness and any other Causes of Action in favor of the Reorganized Debtors or their Estates. The Reorganized Debtors shall be permitted to pursue such retained claims, rights or Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors.

## ARTICLE X

## RETENTION OF JURISDICTION

Pursuant to sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Plan, the Confirmation Order and the Chapter 11 Cases to the fullest extent permitted by law, including jurisdiction to:

(a) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interests;

(b) Grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan for periods ending on or before the Effective Date;

(c) Resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which the Debtors are party or with respect to which any Debtor or Reorganized Debtor may be liable, and hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(d) Ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(e) Decide or resolve any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications involving the Debtors that may be pending on the Effective Date;

(f) Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan, the Rights Offering, or the Confirmation Order;

(g) Resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is executed or created pursuant to the Plan, or any Entity's rights arising from or obligations incurred in connection with the Plan or such other documents.

(h) Modify the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or modify the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Rights Offering or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Solicitation and Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan, the Rights Offering or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, in each case subject to the reasonable consent of the Requisite Committed Purchasers, the Requisite Plan Support Parties and the Steering Committee.

(i) Hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(c)(9) of the Bankruptcy Code; *provided, however,* that from and after the Confirmation Date, the payment of fees and expenses of the Reorganized Debtors, including fees and expenses of counsel, shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

(j) Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan or the Confirmation Order.

(k) Hear and determine any rights, claims or Causes of Action held or reserved by, or accruing to, the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code, the Confirmation Order or, in the case of the Debtors, any other applicable law;

(l) Enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases;

(m) Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated, or distributions pursuant to the Plan are enjoined or stayed;

(n) Determine any other matters that may arise in connection with or relate to the Plan, the Solicitation and Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Rights Offering, or the Confirmation Order;

(o) Enter an order of final decree closing the Chapter 11 Cases;

(p) Hear and resolve all matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(q) Hear and resolve all matters involving the nature, existence or scope of the Debtors' discharge;

(r) Hear and resolve all matters related to the property of the Estates from and after the Confirmation Date;

(s) Hear and resolve all matters and disputes related to the CVC Settlement Agreement; and

(t) Hear and resolve such other matters as may be provided in the Confirmation Order or as may be authorized by the Bankruptcy Code.

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

Section 11.1. *Payment of Statutory Fees.*

All fees payable under section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date.

Section 11.2. *Section 1145 Exemption.*

Pursuant to section 1145(a) of the Bankruptcy Code, the Subscription Rights, shares of Reorganized RII Common Stock, shares of Reorganized RII Preferred Stock issuable upon exercise and payment under the Subscription Rights and the New Third-Lien Notes issued under

the Plan shall be exempt from registration under section 5 of the Securities Act and may be resold by holders thereof without registration, unless the holder is an "underwriter" (as defined in section 1145(b)(1) of the Bankruptcy Code) with respect to such securities, in each case, subject to the terms thereof, applicable securities laws, the Reorganized RII Constituent Documents and the Registration Rights Agreement, as applicable.

Section 11.3. *Governing Law.*

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law, rule or regulation is applicable, or to the extent that an exhibit or supplement to the Plan provides otherwise, the Plan shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws thereof that would require application of the law of another jurisdiction.

Section 11.4. *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors (with the reasonable consent of the Requisite Committed Purchasers, the Requisite Plan Support Parties and the Steering Committee, and, with respect to any term or provision relating to the CVC Settlement Agreement, with the prior written consent of Court Square) shall have the power to alter and interpret such term or provision to render it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remaining terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

Section 11.5. *Inconsistency.*

In the event of any inconsistency among the Plan, the Solicitation and Disclosure Statement, the Plan Documents, any exhibit or schedule to the Plan, or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

Section 11.6. *Filing of Additional Documents.*

The Debtors (or the Reorganized Debtors, as the case may be), with the reasonable consent of the Steering Committee, the Requisite Committed Purchasers and the Requisite Plan Support Parties, shall File such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Section 11.7. *Service of Documents.*

All notices, requests and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered (or, in the case of notice by facsimile transmission, when received and telephonically confirmed) addressed as follows:

> Remy International, Inc.
> 2902 Enterprise Drive
> Anderson, IN 46013
> Attn: Kerry A. Shiba
>
> with copies to:
>
> Shearman & Sterling LLP
> 599 Lexington Avenue
> New York, NY 10022
> Attn: Douglas P. Bartner, Esq.,
>
> and
>
> Young Conaway Stargatt & Taylor, LLP
> The Brandywine Building
> P.O. Box 391
> 1000 West Street, 17th Floor
> Wilmington, DE 19801
> Attn: Pauline K. Morgan, Esq.

Section 11.8. *Section 1125(e) of the Bankruptcy Code.*

As of the Confirmation Date, (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including section 1125(e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors, the Committed Purchasers, the Plan Support Parties, the Informal Committee, the Steering Committee and each of their respective affiliates, agents, directors, officers, employees, advisors and attorneys shall be deemed to have participated in good faith, and in compliance with the applicable provisions of the Bankruptcy Code, in the offer and issuance of any securities under the Plan, and therefore, are not, and on account of such offer, issuance and solicitation shall not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

Section 11.9. *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code, no stamp tax, recording tax, personal property tax, real estate transfer tax, sales or use tax or other similar tax shall result from, or be levied on account of, (a) the issuance, transfer or exchange of notes or equity

securities, (b) the creation of any mortgage, deed of trust, lien, pledge or other security interest, (c) the making or assignment of any lease or sublease, or (d) the making or delivery of any deed or other instrument of transfer, under, in furtherance of or in connection with, the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale, and transfers of tangible property. Unless the Bankruptcy Court orders otherwise, all sales, transfers and assignments of owned and leased property approved by the Bankruptcy Court on or before the Effective Date shall be deemed to have been in furtherance of, or in connection with, the Plan.

Section 11.10. *Tax Reporting and Compliance.*

The Reorganized Debtors shall be authorized to request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for any and all taxable periods ending after the Petition Date through, and including, the Effective Date.

Section 11.11. *Schedules and Exhibits.*

Other than for purposes of Section 11.5, all exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if fully set forth herein.

Section 11.12. *No Prejudice.*

If the Confirmation Order is vacated or the Effective Date has not occurred within one year of the last day of the Confirmation Hearing, then (a) the Confirmation Order shall be vacated, (b) the Plan shall be null and void in all respects, (c) no distributions under the Plan shall be made, (d) the Debtors and all holders of Claims and Equity Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date and (e) nothing contained in the Plan or the Solicitation and Disclosure Statement shall: (i) be deemed to constitute a waiver or release of (x) any Claims by the Informal Committee, the Steering Committee, the Committed Purchasers or the Plan Support Parties or (y) any Claims against, or Equity Interests in, the Debtors; (ii) prejudice in any manner the rights of the Debtors, the Informal Committee, the Steering Committee, the Committed Purchasers or the Plan Support Parties; or (iii) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Informal Committee, the Steering Committee, the Committed Purchasers or the Plan Support Parties, in any respect.

Section 11.13. *Allocation of Payments.*

To the extent that any Allowed Claim entitled to distribution hereunder is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for all income tax purposes, be allocated to the principal amount of such Claim first, and then, to the extent that the consideration exceeds such principal amount, to the portion of such Claim representing accrued but unpaid interest.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

Dated: _October 8_, 2007

Respectfully Submitted,
REMY WORLDWIDE HOLDINGS, INC.

_[signature]_

John H. Weber
President

Remy Worldwide Holdings, Inc.
Ballantrae Corporation
Western Reman Industrial, Inc.
HSG I, Inc.
HSG II, Inc.
International Fuel Systems, Inc.
iPower Technologies, Inc.
M. & M. Knopf Auto Parts, L.L.C.
Marine Corporation of America
NABCO, Inc.
Power Investments Marine, Inc.
Power Investments, Inc.
Powrbilt Products, Inc.
Publitech, Inc.
Reman Holdings, L.L.C.
Remy Alternators, Inc.
Remy India Holdings, Inc.
Remy International, Inc.
Remy International Holdings, Inc.
Remy Korea Holdings, L.L.C.
Remy Logistics, L.L.C.
Remy Powertrain, L.P.
Remy Reman, L.L.C.
Remy Sales, Inc.
Remy Inc.
Unit Parts Company
Western Reman Industrial, LLC
World Wide Automotive, L.L.C.
World Wide Automotive Distributors, Inc.

REMY WORLDWIDE HOLDINGS, INC.,
as agent and attorney-in-fact for each of the
foregoing entities

_[signature]_

John H. Weber
President