**EXHIBIT B**
**to**
**Disclosure Statement:**
**Plan Support Agreement (Redacted)**

[THIS PAGE INTENTIONALLY LEFT BLANK]

EXECUTION COPY

## PLAN SUPPORT AGREEMENT

PLAN SUPPORT AGREEMENT (this "Agreement"), dated as of June 15, 2007 among the noteholders party hereto from time to time (each, a "Plan Support Party", and collectively, the "Plan Support Parties"), Remy Worldwide Holdings, Inc. ("RWH") and Remy International, Inc. ("RII", together with RWH and the subsidiaries of RII and RWH that are signatories hereto (the "Remy Subsidiaries"), "Remy").

## WHEREAS:

A.  Prior to the date hereof, Remy and representatives of certain holders of the Notes (defined below) have discussed the possibility of consummating a financial restructuring (the "Restructuring") of the Notes and certain other of Remy's and its subsidiaries' institutional indebtedness and other obligations.

B.  The principal terms of the Restructuring are set forth in the Term Sheet for the Prepackaged Plan and the Disclosure Statement attached hereto as Exhibit A.

C.  It is anticipated that, as soon as practicable after the execution of this Agreement, Fidelity National Special Opportunities, Inc. ("FNSO"), Ore Hill Hub Fund Ltd., Third Point LLC, Group G Capital Partners, LLC, H Partners LP, Hoak & Co., Corriente Master Fund, LP, Joshua Tree Capital Management, LLC and such other parties as may agree to backstop the Rights Offering (collectively, the "Committed Purchasers") will enter into the Backstop Commitment with Remy.

D.  Remy and each Plan Support Party (each a "Party" and collectively, the "Parties") anticipate that the Restructuring will be implemented through a solicitation of votes for a prepackaged plan of reorganization pursuant to Section 3(a)(9) of the Securities Act of 1933, as amended, and Sections 1125 and 1145 of the Bankruptcy Code.

NOW, THEREFORE, in consideration of the covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each Party, intending to be legally bound hereby, agrees as follows:

1.  Definitions. The following terms shall have the following definitions:

"9 ⅜% Indenture" means the indenture governing the 9 ⅜% Senior Subordinated Notes due 2012 among RII, the subsidiary guarantors named therein, and U.S. Bank National Association, as successor trustee, dated April 23, 2004, as subsequently amended, modified or supplemented, and the agreements entered into and documents delivered in connection therewith.

"9 ⅜% Notes" means RII's $150 million 9 ⅜% Senior Subordinated Notes due 2012.

"11% Indenture" means the indenture governing the 11% Senior Subordinated Notes due 2009 among RII, the subsidiary guarantors named therein and U.S. Bank National Association, as successor trustee, dated April 26, 2001, as subsequently amended, modified or supplemented, and the agreements entered into and documents delivered in connection therewith.

"11% Notes" means RII's $165 million 11% Senior Subordinated Notes due 2009.

"Agreement" has the meaning set forth in the recitals hereto.

"Assumption Agreement" has the meaning set forth in paragraph 6 hereof.

"Backstop Commitment" means one or more commitment agreements to be executed by RWH or RII, as the case may be, and the Committed Purchasers, which, among other things, commit the Committed Purchasers to backstop the Rights Offering, pursuant to the terms thereof, in the form attached to the IC Acknowledgment.

"Ballot" means the ballot distributed with the Disclosure Statement for voting on the Prepackaged Plan.

"Bankruptcy Code" means chapter 11 of title 11 of the United States Code, 11 U.S.C. §§101 et seq.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

"Business Day" means a day (other than a Saturday or Sunday) on which banks are open for general business in New York City.

"Chapter 11 Cases" means the voluntary chapter 11 proceedings to be commenced by the Filing Entities for the principal purpose of consummating the Prepackaged Plan.

"Committed Purchasers" has the meaning set forth in the recitals hereto.

"Definitive Documents" means the Backstop Commitment, the Financing Commitment Letter, the Disclosure Statement, the Prepackaged Plan and all related documents, exhibits, annexes and schedules in the form attached to the IC Acknowledgment, as such documents may be amended, modified or supplemented from time to time in accordance with the terms hereof and thereof and with such immaterial clarifications and grammatical changes as may be necessary to give them force and effect.

"DIP Financing" means that certain debtor in possession financing composed of a revolving credit facility and a term loan facility, as described in the Term Sheet.

"Disclosure Statement" means the solicitation and disclosure statement in respect of the 3(a)(9) Solicitation describing, among other things, the Restructuring contemplated by the Term Sheet, in the form attached to the IC Acknowledgement.

"Effective Date" has the meaning set forth in paragraph 2 hereof.

"Existing Credit Agreement" means that certain Third Amended and Restated Loan and Security Agreement, dated December 27, 2005 among RII and certain subsidiaries of RII named therein, as borrowers, Wachovia Capital Finance Corporation (Central), as Administrative Agent and US Collateral Agent, Wachovia Bank, National Association, as Documentation Agent, Credit Suisse, as Term Loan Agent and the financial institutions named therein, as lenders, as amended from time to time.

"Exit Financing" means that certain exit financing composed of the New First-Lien Facilities and the New Second-Lien Facility.

"Filing Entities" means RWH, RII, the Remy Subsidiaries and other related entities identified in the Prepackaged Plan.

"Financing Commitment Letter" means one or more commitment letters to be executed by one or more third-party institutions, which set forth the principal terms of the DIP Financing and the Exit Financing and which commit such third-party institutions to provide the DIP Financing and the Exit Financing, pursuant to the terms thereof, and in the form attached to the IC Acknowledgement.

"FNSO" has the meaning set forth in the recitals hereto.

"FRNs" means RII's $125 million Second-Priority Senior Secured Floating Rate Notes due 2009.

"IC Acknowledgment" has the meaning set forth in paragraph 10 hereof.

"Indentures" means, collectively, the Senior Indenture, the 9 ⅜% Indenture, and the 11% Indenture.

"Informal Committee" means the informal committee of certain unaffiliated holders of the Senior Notes, 11% Notes and 9 ⅜% Notes.

"Notes" means, collectively, the Senior Notes, the 9 ⅜% Notes, and the 11% Notes.

"Oustide Commencement Date" has the meaning set forth in paragraph 5(a)(iv) hereof.

"Outside Date" has the meaning set forth in paragraph 5(a)(i) hereof.

"Party" has the meaning set forth in the recitals hereto.

"Person" means and includes an individual, a partnership, a joint venture, a limited liability company, a corporation, a trust, an unincorporated organization, a group or any legal entity or association.

"Plan Support Party" has the meaning set forth in the recitals hereto.

"Prepackaged Plan" means the Filing Entities' joint prepackaged plan of reorganization, including all exhibits and supplements thereto, the terms of which are consistent with the Term Sheet, in the form attached to the IC Acknowledgment.

"Release Box" means the box on the Ballot pursuant to which a holder of a claim can opt out of the releases to be provided under the Prepackaged Plan to (i) the Informal Committee and its members and professional advisors, including members, partners, representatives, directors, officers and employees, (ii) the current directors, officers, employees and professional advisors of Remy, (iii) the Committed Purchasers, and each of their respective agents, advisors, members, partners, representatives, directors, officers, employees, and professional advisors (in each case, in their capacity as such) and (iv) such other Persons as the Requisite Plan Support Parties and Remy may agree.

"Remy" has the meaning set forth in the recitals hereto.

"Remy Subsidiaries" has the meaning set forth in the recitals hereto.

"Requisite Plan Support Parties" means Plan Support Parties holding at least 50% in principal amount of each of (i) the Senior Notes and (ii) the Subordinated Notes.

"Restructuring" has the meaning set forth in the recitals hereto.

"Rights Offering" means that certain rights offering made by RWH or RII, as the case may be, to holders of the Notes to acquire up to $75 million of preferred stock to be issued by reorganized RWH or RII, as the case may be, the principal terms of which will be set forth in the Disclosure Statement.

"RII" has the meaning set forth in the recitals hereto.

"RWH" has the meaning set forth in the recitals hereto.

"Senior Indenture" means the indenture governing the 8 ⅝% Senior Notes due 2007 among RII, the subsidiary guarantors named therein and United States Trust Company of New York, as trustee, dated December 22, 1997 and the agreements entered into and documents delivered in connection therewith.

"Senior Notes" means RII's $145 million 8 ⅝% Senior Notes due 2007.

"Solicitation Period" means that certain period during which Remy will distribute the Prepackaged Plan, the Ballot and the Disclosure Statement to holders of the Notes.

Notes.

"Subordinated Notes" means, collectively, the 9 ¾% Notes and the 11%

"Term Sheet" has the meaning set forth in the recitals hereto.

"Transfer" has the meaning set forth in paragraph 6 hereof.

"Transferee" has the meaning set forth in paragraph 6 hereof.

"Termination Date" has the meaning set forth in paragraph 5 hereof.

"Termination Event" has the meaning set forth in paragraph 5 hereof.

Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Term Sheet.

2.      Effective Date. This Agreement shall be effective at 12:01 a.m. prevailing Eastern Time on the date on which the following conditions have been satisfied, but in no event later than June 15, 2007 (the "Effective Date"), (a) Remy shall have executed and delivered counterpart signature pages to this Agreement to the Informal Committee and (b) the Plan Support Parties holding at least 66 ⅔% of the outstanding principal amount of each of the Senior Notes and the Subordinated Notes shall have delivered to Remy an executed counterpart of this Agreement by such date, which amount shall be confirmed in writing to Remy by counsel to the Informal Committee in reliance on the representations required by paragraph 7(a) hereof.

3.      Commitment of Plan Support Parties. Subject to the occurrence of the Effective Date and prior to the occurrence of the Termination Date (if applicable), each Plan Support Party shall:

(a)      vote all Notes beneficially owned by such Plan Support Party or for which it is the nominee, investment manager or advisor for beneficial holders thereof in favor of the Prepackaged Plan in accordance with the applicable procedures set forth in the Disclosure Statement and accompanying voting materials, and return a duly-executed Ballot in connection therewith no later than the fifth Business Day following the commencement of the Solicitation Period;

(b)      not check the Release Box;

(c)      not withdraw or revoke its tender, consent or vote;

(d)      forbear from the exercise of any rights or remedies it may have under any Indenture, applicable law or otherwise with respect to any default or event of default existing as of the date hereof under any Indenture and any future defaults or events of default under any Indenture;

(e)      following the commencement of the Chapter 11 Cases, not (i) object, on any grounds, to the terms, conditions, nature or amount of the Filing Entities' proposed debtor-in-possession financing, except to the extent that such terms are inconsistent with the terms contained in the Financing Commitment Letter, the Prepackaged Plan or the Disclosure

Statement, (ii) object, on any grounds, to confirmation of the Filing Entities' joint prepackaged plan of reorganization, except to the extent that the terms of such joint prepackaged plan of reorganization are inconsistent with the terms contained in the Prepackaged Plan, or (iii) directly or indirectly seek, solicit, support or encourage (x) any objection to the Prepackaged Plan or (y) any other plan of reorganization or liquidation;

(f)     not take any other action, including, without limitation, initiating any legal proceeding that is inconsistent with, or that would delay consummation of, the Restructuring and the transactions embodied in the Definitive Documents, except to the extent that such transactions are inconsistent with those set forth in the Disclosure Statement or the Prepackaged Plan; and

(g)     use its reasonable best efforts to work with Remy in its efforts to satisfy the timeline set forth in paragraph 4(ii) hereof and to provide the IC Acknowledgment as soon as practicable.

Notwithstanding the foregoing, nothing in this Agreement shall be construed as to prohibit any Party from appearing as a party-in-interest in any matter to be adjudicated in the Chapter 11 Cases so long as such appearance and the positions advocated in connection therewith are not materially inconsistent with the Prepackaged Plan or the Disclosure Statement and are not for the purpose of hindering, delaying or preventing the consummation of the Prepackaged Plan and the transactions contemplated thereby.

4.     Remy Commitment. Remy agrees to use its reasonable best efforts to (i) support and complete the Rights Offering and Restructuring, (ii) do all things reasonably necessary and appropriate in furtherance of the Rights Offering and Restructuring, including, without limitation (w) commencing the 3(a)(9) Solicitation by July 3, 2007, (x) completing the 3(a)(9) Solicitation by August 3, 2007, (y) taking all steps reasonably necessary and desirable to obtain an order of the Bankruptcy Court confirming the Prepackaged Plan on or before September 14, 2007, and (z) taking all steps reasonably necessary and desirable to cause the effective date of the Prepackaged Plan to occur on or before September 30, 2007, and (iii) obtain any and all required regulatory and/or third-party approvals for the Restructuring; provided, further, that Remy shall not seek, solicit, negotiate, or otherwise take any action to encourage the making of any alternative proposal to effect a reorganization, restructuring, recapitalization, merger or sale of all or substantially all of its assets in a single transaction or series of related transactions, or provide any information to any party contemplating such a transaction. Without limiting the foregoing, if, in any event, Remy consummates a transaction not contemplated by this Agreement, Remy shall promptly pay in cash any and all reasonable accrued and unpaid out-of-pocket expenses incurred by the Plan Support Parties and the Informal Committee through and including the date of termination of this Agreement, including, without limitation, all reasonable fees and out-of-pocket expenses of legal and financial advisers to the Plan Support Parties including Akin Gump Strauss Hauer & Feld LLP and Houlihan Lokey Howard & Zukin Capital.

5.     Termination. This Agreement shall terminate and be of no further force or effect, upon the first to occur of the following events (each a "Termination Event"):

(a)     Automatic Termination:

i.    if the 3(a)(9) Solicitation has not been commenced by 11:59 p.m. prevailing Eastern Time on July 15, 2005 (as may be extended in accordance with paragraph 5(b) of this Agreement, the "Oustide Commencement Date");

ii.   if the 3(a)(9) Solicitation has not been concluded by 11:59 p.m. prevailing Eastern Time on August 31, 2007;

iii.  if Remy fails to commence the Chapter 11 Cases by 11:59 p.m. prevailing Eastern Time on September 4, 2007;

iv.   if the effective date of the Prepackaged Plan does not occur by 11:59 p.m. prevailing Eastern Time on October 31, 2007 (the "Outside Date");

v.    if Remy unilaterally (1) withdraws the Prepackaged Plan, (2) moves to voluntarily dismiss any of the Chapter 11 Cases, (3) moves for conversion of any of the Chapter 11 Cases to chapter 7 of the Bankruptcy Code, or (4) moves for appointment of an examiner with expanded powers pursuant to Section 1104 of the Bankruptcy Code in any of the Chapter 11 Cases, except as permitted by paragraph 7 hereof; or

vi.   if (1) a trustee or an examiner with expanded powers is appointed in any of the Chapter 11 Cases or (2) any of the Chapter 11 Cases is converted to a case under chapter 7 of the Bankruptcy Code.

(b)    Notwithstanding any provision in this Agreement to the contrary, upon the written consent of the Requisite Plan Support Parties, (i) the dates set forth in paragraphs 5(a)(i) through (iv) may be extended prior to or upon each such date and such later dates agreed to in lieu thereof and shall be of the same force and effect as the dates provided herein; and (ii) the automatic termination of this Agreement provided in paragraphs 5(a)(v) through (vi) may be waived within five Business Days of the occurrence of any event described therein.

(c)    Termination Contingent Upon Vote By The Requisite Plan Support Parties. This Agreement shall terminate and be of no further force or effect upon written notice to Remy by the Requisite Plan Support Parties (provided, however, that in case of either of the events described in paragraphs 5(c)(ii)(1) or (2) below, Remy has not commenced the Chapter 11 Cases within five days thereof):

i.    if any amendment, modification or supplement to the Prepackaged Plan confirmed by the Bankruptcy Court contains terms that are inconsistent with the terms set forth in the Prepackaged Plan and the Disclosure Statement;

ii.   prior to commencement of the Chapter 11 Cases, upon the occurrence of:

1. the acceleration of Indebtedness (as defined in the Indentures and the FRNs) of Remy or any Subsidiary (as defined in the Indentures) or Significant Subsidiary of Remy (as defined in the Indentures) (including, without limitation, any of the Notes) by the holders of the Notes because of a default under the Indentures; provided that the total amount of such

Indebtedness accelerated exceeds $10.0 million, or its U.S. dollar equivalent at that time; or

2. the commencement by the trustee under any of the Indentures or the indenture for the FRNs, or holders of more than 25% of the face amount of any issuance of Notes or the FRNs, as the case may be, of any action or proceeding to collect or recover any amount that is or may become due and payable with respect to such notes;

iii. if any change, effect, event, occurrence, development, circumstance or state of facts occurs which has or would reasonably be expected to have a materially adverse effect on the business, properties, operations, financial condition or results of operations of Remy (including its foreign subsidiaries and their respective businesses), taken as a whole or which materially impair Remy's ability to perform its obligations under this Agreement or have a materially adverse effect on or prevent or materially delay the consummation of the transactions contemplated by this Agreement; provided, that in no event shall any of the following, alone or in combination, be taken into account in determining whether there has been or would reasonably likely be, a Material Adverse Effect: (i) any effect directly resulting from the public announcement of and compliance with the terms and conditions of this Agreement or the transactions contemplated hereby; (ii) any effect that results from events, circumstances or situations affecting the automotive supply industry and/or the United States economy generally, so long as such effect does not disproportionately affect Remy; or (iii) any effect that results from events, circumstances or situations affecting general worldwide economic or capital market conditions, including acts of war, acts of terrorism or natural disasters, so long as such effect does not disproportionately affect Remy; or

iv. if there shall be a breach by Remy of any material representation, warranty, covenant or agreement contained in this Agreement which breach has not been cured by the earlier of (1) five Business Days after the giving of written notice by the Requisite Plan Support Parties to Remy of such breach and (2) the Outside Date.

The date on which a Termination Event occurs shall be referred to as the "Termination Date".

6.     Transfer of Notes. If, following execution of this Agreement by a Plan Support Party, such Plan Support Party hypothecates, pledges, conveys, transfers, assigns or sells (collectively, a "Transfer") all or a part of the Notes held by such Plan Support Party to any Person (each such Person, a "Transferee"), Transferee must, as a condition precedent to such Transfer, execute an assumption in substantially the form set forth hereto as Exhibit B (the "Assumption Agreement"). Any Transfer that is made in violation of the immediately preceding sentence shall be null and void. A Plan Support Party shall notify Remy in writing of any Transfer by it of Notes within two Business Days of the execution of an agreement (or trade confirmation) in respect of such Transfer.

7.    Plan Support Party Representations. Each Plan Support Party represents and warrants to each other Party that:

a) as of the date of this Agreement, it is the beneficial owner of the face amount of the Notes, or is the nominee, investment manager or advisor for beneficial holders of the Notes in the principal amount set forth on its signature page hereto, as such Plan Support Party has represented in writing to counsel for the Informal Committee, which amount Remy understands and acknowledges is proprietary and confidential to such Plan Support Party;

b) other than pursuant to this Agreement, such Notes are free and clear of any pledge, lien, security interest, charge, claim, equity, option, proxy, voting restriction, right of first refusal or other limitation on disposition or encumbrances of any kind, that would adversely affect in any way such Plan Support Party's performance of its obligations contained in this Agreement at the time such obligations are required to be performed;

c) as of the date of this Agreement, such Party is duly organized, validly existing, and in good standing under the laws of the state of its organization, and has all requisite corporate, partnership, or limited liability company power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement

d) assuming the due execution and delivery of this Agreement by Remy, this Agreement is the legally valid and binding obligation of it, enforceable against it in accordance with its terms, except as may be limited by bankruptcy, insolvency, or similar laws, or by equitable principles relating to or limiting creditors' rights generally;

e) as of the date of this Agreement, it is not aware of any event that, due to any fiduciary or similar duty to any other person, would prevent it from taking any action required of it under this Agreement.

8.    Informal Committee/Cooperation. The Informal Committee is hereby authorized by each Plan Support party to continue to pursue and negotiate the terms of the Restructuring and definitive documentation related thereto containing terms (i) substantially in accordance with the terms set forth in the Term Sheet and (ii) with respect to terms not set forth in the Term Sheet, reasonably satisfactory to the Requisite Plan Support Parties. Subject to the occurrence of the Effective Date and until the occurrence of the Termination Date (if applicable), the Parties will (i) negotiate in good faith the definitive documentation necessary to implement the Restructuring, which shall be, in all material respects, substantially in accordance with the terms and conditions contained in the Term Sheet, and (ii) act in good faith to support the implementation and documentation of the Restructuring. Without limiting the generality of the foregoing, prior to the commencement of and during the Chapter 11 Cases, Remy shall, except in an emergency where it is not reasonably practicable, provide draft copies of all motions or applications and other documents Remy intends to file with the Bankruptcy Court to counsel for the Informal Committee within three Business Days prior to the date when Remy intends to file any such document and shall consult in good faith with counsel to the Informal Committee regarding the form and substance of any such proposed filing with the Bankruptcy Court.

9.      Service on Official Committee. Notwithstanding anything herein to the contrary, if a Plan Support Party is appointed to and serves on an official committee in the Chapter 11 Cases, the terms of this Agreement shall not be construed to limit such Plan Support Party's exercise of its fiduciary duties in its role as a member of such committee, and any exercise of such fiduciary duties shall not be deemed to constitute a breach of the terms of this Agreement; provided, however, that serving as a member of such committee shall not relieve the Plan Support Party of any obligations to vote in favor of the Prepackaged Plan; provided, further, that nothing in this Agreement shall be construed as requiring any Plan Support Party to serve on any official committee in the Chapter 11 Cases.

10.     Certification of Definitive Documents. Prior to the commencement of the 3(a)(9) Solicitation, and upon the agreement of RWH and RII, on behalf of themselves and their direct and indirect subsidiaries, and the Requisite Plan Support Parties that the Definitive Documents are in final form, RWH and RII, on behalf of themselves and their direct and indirect subsidiaries, and the Requisite Plan Support Parties shall enter into a written acknowledgment substantially in the form attached hereto as Exhibit C (the "IC Acknowledgment"), confirming that the documents attached thereto are in final form and are consistent with the terms set forth in the Term Sheet.

11.     Remy Representations. Remy represents to each other Party that:

   a)  as of the date of this Agreement, it is duly organized, validly existing, and in good standing under the laws of the state of its organization, and has all requisite corporate, partnership, or limited liability company power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement;

   b)  assuming the due execution and delivery of this Agreement by the Plan Support Parties, this Agreement is the legally valid and binding obligation of it, enforceable against it in accordance with its terms, except as may be limited by bankruptcy, insolvency, or similar laws, or by equitable principles relating to or limiting creditors' rights generally; and

   c)  as of the date of this Agreement, it is not aware of any event that, due to any fiduciary or similar duty to any other person, would prevent it from taking any action required of it under this Agreement.

12.     Entire Agreement. This Agreement, including schedules and annexes, constitutes the entire agreement of the Parties with respect to the subject matter of this Agreement, and supersedes all other prior negotiations, agreements and understandings, whether written or oral, among the Parties with respect to the subject matter of this Agreement; provided, however, that any confidentiality agreement executed by any Plan Support Party shall survive this Agreement and shall continue to be in full force and effect, in accordance with the terms thereof, irrespective of the terms hereof, except that the term "Outside Date" defined in the confidentiality agreements dated as of May 25, 2007 executed by RII and each Committed Purchaser (other than FNSO) shall be replaced with the term Outside Commencement Date as defined herein; provided, further, that the Parties shall enter into various definitive documents upon the effective date of the Prepackaged Plan to give effect to the transactions contemplated in this Agreement.

13.     Survival of Agreement. Each of the Parties acknowledges and agrees that this Agreement is being executed in connection with negotiations concerning a possible financial restructuring of Remy and in contemplation of a possible bankruptcy filing by Remy, and (a) the rights granted in this Agreement are enforceable by each signatory hereto without approval of the Bankruptcy Court, (b) the exercise of such rights will not violate the automatic stay provisions of the Bankruptcy Code and (c) Remy hereby waives its right to assert a contrary position in the Remy bankruptcy cases, if any, with respect to the foregoing.

14.     Acquisition of Additional Notes. This Agreement shall in no way be construed to preclude any Plan Support Party from acquiring additional Notes; provided, however, that any such additional Notes automatically shall be deemed to be subject to the terms of this Agreement and the representation contained in paragraph 7 hereof shall be deemed to have been made with respect to any Notes acquired by a Plan Support Party after the date hereof. A Plan Support Party shall notify counsel for the Informal Committee, in writing, of any Notes acquired by it within five Business Days of the execution of an agreement (or trade confirmation) in respect of such acquisition.

15.     Public Announcements. Except as required by applicable law or regulation, or the rules of any applicable stock exchange or regulatory body, or in filings to be made with the Bankruptcy Court (which shall be governed by paragraph 8 of this Agreement), neither Remy nor the Plan Support Parties shall, nor shall they permit any of their respective affiliates to, make any public announcement or otherwise communicate with any news media in respect of this Agreement or the transactions contemplated hereby or by the Definitive Documents without the prior written consent of the other parties hereto (which consent shall not be unreasonably withheld or delayed); provided, however, that notwithstanding the foregoing Remy may issue one or more press releases related to the execution and delivery of this Agreement and the transactions contemplated hereby and shall provide an advance draft copy thereof and reasonably consult with the Informal Committee with respect to the text thereof.

16.     Waiver. If the transactions contemplated herein are not consummated, or following the occurrence of the Termination Date, if applicable, nothing shall be construed herein as a waiver by any Party of any or all of such Party's rights and the Parties expressly reserve any and all of their respective rights. Pursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Agreement and all negotiations relating hereto shall not be admissible into evidence in any proceeding other than a proceeding to enforce its terms.

17.     Counterparts. This Agreement may be executed in one or more counterparts, each of which, when so executed, shall constitute the same instrument and the counterparts may be delivered by facsimile transmission or by electronic mail in portable document format (.pdf).

18.     Amendments. Except as otherwise provided herein, this Agreement may not be modified, amended or supplemented without prior written consent of Remy and each Plan Support Party.

19.     Headings. The headings of the sections, paragraphs, subsections and subparagraphs of this Agreement are inserted for convenience only and shall not affect the interpretation hereof.

20.     Specific Performance. It is understood and agreed by the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching

Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy of any such breach, including, without limitation, an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations hereunder.

21.    Relationship Among Parties. Notwithstanding anything herein to the contrary, the duties and obligations of the Plan Support Parties under this Agreement shall be several, not joint. Furthermore, it is understood and agreed that no Plan Support Party has any duty of trust or confidence in any form with any other Plan Support Party, and there are no commitments among or between them. In this regard, it is understood and agreed that any Plan Support Party may trade in the Notes or other debt or equity securities of Remy and its Subsidiaries without the consent of Remy or any other Plan Support Party, subject to applicable securities laws and paragraphs 6 and 12 of this Agreement. No Plan Support Party shall have any responsibility for any such trading by any other entity by virtue of this Agreement. No prior history, pattern or practice of sharing confidences among or between Plan Support Parties shall in any way affect or negate this understanding and agreement.

22.    Confidential Treatment of Plan Support Party Holdings. Remy agrees to keep confidential the amount of Notes held (beneficially or otherwise) by each Plan Support Party, except to the extent required by applicable law or unless otherwise agreed to in writing with a Plan Support Party (and then, only with respect to such agreeing Plan Support Party's holdings). If Remy determines that it is required to attach a copy of this Agreement to any Definitive Document, it will redact any reference to a specific Plan Support Party's holdings. Notwithstanding the foregoing, Remy shall not be required to keep confidential the aggregate holdings of the Plan Support Parties.

23.    Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to such state's choice of law provisions which would require the application of the law of any other jurisdiction. By its execution and delivery of this Agreement, each of the Parties irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding against it with respect to any matter arising under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, may be brought in the United States District Court for the Southern District of New York, and by execution and delivery of this Agreement, each of the Parties irrevocably accepts and submits itself to the exclusive jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding. Notwithstanding the foregoing consent to New York jurisdiction, if the Chapter 11 Cases are commenced, each Party agrees that the Bankruptcy Court shall have exclusive jurisdiction of all matters arising out of or in connection with this Agreement.

24.    Notices. All notices, requests and other communications hereunder must be in writing and will be deemed to have been duly given only if delivered personally or by facsimile transmission or mailed (first class postage prepaid) to the parties at the following addresses or facsimile numbers:

If to a Plan Support Party, to the address set forth beneath such Plan Support Party's name below, with a copy to:

Akin Gump Strauss Hauer & Feld LLP
590 Madison Avenue, 19th Floor
New York, NY 10022
Attn: Fred S. Hodara, Esq.
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

If to Remy:

Remy Worldwide Holdings Inc.
2902 Enterprise Drive
Anderson, IN 46013
Attn: Mr. Kerry A. Shiba
Telephone: (765) 778-5565
Facsimile: (765) 221-7365

with a copy to:

Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Attn: Douglas P. Bartner, Esq.
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

25.    No Third-Party Beneficiaries.  The terms and provisions of this Agreement are intended solely for the benefit of the Parties hereto and their respective successors and permitted assigns, and it is not the intention of the Parties to confer third-party beneficiary rights upon any other person.

**[Signature Pages Follow]**

IN WITNESS WHEREOF, RWH, RII, the Remy Subsidiaries and the Plan Support Parties have executed this Agreement as of the date first written above.

REMY WORLDWIDE HOLDINGS, INC.

By: _____
    Name:   REMY A. SHISA
    Title:    SR. VP + CFO

BALLANTRAE CORPORATION
FRANKLIN POWER PRODUCTS, INC.
HSG I, INC.
HSG II, INC.
INTERNATIONAL FUEL SYSTEMS, INC.
M&M KNOPF AUTO PARTS, L.L.C.
MARINE CORPORATION OF AMERICA
NABCO, INC.
POWER INVESTMENTS, INC.
POWER INVESTMENTS MARINE, INC.
POWRBILT PRODUCTS, INC.
REMAN HOLDINGS, L.L.C.
REMY INC.
REMY INTERNATIONAL HOLDINGS, INC.
REMY INTERNATIONAL, INC.
REMY KOREA HOLDINGS, L.L.C.
REMY LOGISTICS, L.L.C.
REMY REMAN, L.L.C.
REMY SALES, INC.
UNIT PARTS COMPANY
WESTERN REMAN INDUSTRIAL, LLC
WORLD WIDE AUTOMOTIVE, L.L.C.

By: _____
    Craig Hart
    Treasurer for each of the above entities

Fidelity National Special Opportund
_____    Inc.
Name of Plan Support Party

_____
Authorized Signatory

Eric Scroggins / Exec. Vice President
_____
(Type or Print Name and Title of Authorized Signatory)

[REDACTED]
_____
Principal Amount of 9⅛% Notes

[REDACTED]
_____
Principal Amount of 11% Notes

[REDACTED]
_____
Principal Amount of Senior Notes

Address of Plan Support Party:

Fidelity National Special Opportunites, Inc.
4050 Calle Real, Suite 210
Santa Barbara, CA 93110
Attn: Eric Scroggins
Tel: 805 - 696 - 7350
Fax:   805 - 696 - 7913
Email: eric.scroggins@fnf.com

THIRD POINT LLC

Authorized Signatory

Neel Devani
Partner

$
Principal Amount of 9⅝% Notes

[REDACTED]

Principal Amount of 11% Notes

[REDACTED]

Principal Amount of Senior Notes

Address of Plan Support Party:

390 Park Ave, Suite 1800
New York, NY 10022

Attn: Neel Devani
Tel: 310.356.4657
Fax:
Email: NDEVANI@THIRDPOINT.COM

Honk & Co.

**Name of Plan Support Party**

_[signature]_

**Authorized Signatory**

Chuck Wer Hui / Partner

**(Type or Print Name and Title of Authorized Signatory)**

[REDACTED]

**Principal Amount of 9⅛% Notes**

[REDACTED]

**Principal Amount of 11% Notes**

[REDACTED]

**Principal Amount of Senior Notes**

Address of Plan Support Party:

500 Crescent Ct. Ste 230
Dallas, TX 75201

Attn: Chuck Werthi
Tel: 214 855 2251
Fax:
Email: chuck@honkco.com

H Partners LP
_____
Name of Plan Support Party

_____
Authorized Signatory

Rehan Jaffer / MANAGING Member
_____
(Type or Print Name and Title of Authorized Signatory

[REDACTED]
_____
Principal Amount of 9¾% Notes

[REDACTED]
_____
Principal Amount of 11% Notes

$_____
Principal Amount of Senior Notes

Address of Plan Support Party:

152 W. 57th Street / floor 52
New York, NY 10019
_____

Attn: Rehan Jaffer
Tel: 212 974 7175
Fax: 212 974 718
Email: RJAFFER@RIVERRUNMANAGEMENT.COM

**Ore Hill Hub Fund Ltd.**
**Geer Mountain Financing, Ltd.**
**Kinney Hill Credit Opportunities Fund, Ltd.**
Name of Plan Support Party

By: Ore Hill Partners LLC
Its: Investment Advisor

Authorized Signatory

Clifton R. Baum, Esq.
General Counsel
Ore Hill Partners LLC
(Type or Print Name and Title of Authorized Signatory

$ _____
Principal Amount of 9¾% Notes

$ _____
Principal Amount of 11% Notes

$   [REDACTED]
$
$_____
Principal Amount of Senior Notes

Address of Plan Support Party:

c/o Ore Hill Partners LLC
650 Fifth Avenue, 9th Floor
New York, NY 10019
Attn:John Irish
Tel: 212-389-2333
Fax: 212-389-2332
Email: jirish@orehill.com

**JOSHUA TREE CAPITAL PARTNERS, LP,**

**By: JOSHUA TREE CAPITAL MANAGEMENT, LP**
**its  General Partner**

**By: JOSHUA TREE CAPITAL MANAGEMENT, LLC**
**its  General Partner**

on behalf of itself and its subsidiaries and affiliates

Name of Plan Support Party

Authorized Signatory

Vikas Tandon, Managing Member
(Type or Print Name and Title of Authorized Signatory

[REDACTED]

$
Principal Amount of 9¾% Notes

[REDACTED]

$
Principal Amount of 11% Notes

[REDACTED]

$
Principal Amount of Senior Notes

Address of Plan Support Party:

One Maritime Plaza
Suite 750
San Francisco, CA 94111
Attn:  Vikas Tandon
Tel:   415-568-4260
Fax:   415-568-4268
Email: vtandon@jtcap.com

Corriente Master Fund, L.P.
by Corriente Capital Management, L.P.
its managing general partner
by Corriente Advisors, LLC
its general partner.

Corriente Master Fund, L.P.
Name of Plan Support Party

Authorized Signatory

James Haddaway        Member G.P.
(Type or Print Name and Title of Authorized Signatory)

[REDACTED]

Principal Amount of 9¾% Notes

[REDACTED]

Principal Amount of 11% Notes

$
Principal Amount of Senior Notes

Address of Plan Support Party:

201 Main St  Ste 1800
Fort Worth TX 76102

Attn: James Haddaway
Tel:  817 - 870 - 1560
Fax:  817 - 870 . 0400
Email: james@corrientecapital.com

Group G Capital Partners LLC
**Name of Plan Support Party**

**Authorized Signatory**

Arthur Weiss, Portfolio Manager
**(Type or Print Name and Title of Authorized Signatory**

[REDACTED]

**Principal Amount of 9⅜% Notes**

[REDACTED]

**Principal Amount of 11% Notes**

[REDACTED]

**Principal Amount of Senior Notes**

Address of Plan Support Party:

Group G Capital Partners
115 Sansome St, suite 1401
San Francisco, CA 94104
Attn: Arthur Weiss
Tel: 415-248-0015
Fax: 415-248-0066
Email: arthur.weiss @ groupgcapital.com

**EXHIBIT A**
to
**Plan Support Agreement:**
**Restructuring Term Sheet**