```
                   UNITED STATES BANKRUPTCY COURT
                        DISTRICT OF DELAWARE


IN RE:                             .    Chapter 11
                                   .
REMY WORLDWIDE HOLDINGS,           .    Case No. 07-11481(KJC)
INC., et al.,                      .    (Jointly Administered)
                                   .
                                   .    December 20, 2007
                                   .    10:00 a.m.
            Debtors.               .    (Wilmington)
                                   .


                    TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE KEVIN J. CAREY
             UNITED STATES BANKRUPTCY COURT JUDGE
```

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1           THE CLERK: All rise.  Be seated.

2           THE COURT: Good morning.

3           MR. MORTON: Good morning, Your Honor.  For the
4  record, Edmon Morton from Young, Conaway, Stargatt & Taylor
5  on behalf of the now reorganized Debtors, Remy International,
6  Inc., *et al.*  Turning to what is a fairly brief agenda, Your
7  Honor.  Item no. 1 is a motion for entry of final decrees
8  with respect to all but Remy International.  The primary
9  reason that Remy International is staying open is we are
10 still in the process of vacating our, certain portions of our
11 headquarters space, and rejecting that lease.  That lease has
12 an effective rejection date per a prior order from this Court
13 of, of sometime in March.  I don't recall the exact date off
14 the top of my head.  And as such, we're leaving that case
15 open, but otherwise closing the cases we've discussed.  We've
16 provided disbursement information during the case to the US
17 Trustee, as well as filed our operating report covering the
18 pre-emergence period.  And we will be filing our final
19 reports as contemplated by the order, within 30 days, so that
20 we can do the final tallying calculation of the US Trustee
21 fees that would be owed for those cases.

22          THE COURT: Okay.

23          MR. MORTON: If Your Honor - - I'm sorry?

24          THE COURT: Should I hold that until we're done the
25 fee apps, and then sign it, or?

1          MR. MORTON: Well, certainly, perhaps I can just
2   approach with all the orders at the end.  Although, since it
3   is leaving the, the lead case open, there will, there won't
4   be any docketing issues with respect to the fee orders - -
5          THE COURT: All right.
6          MR. MORTON:  - - and that order as well.
7          THE COURT: That's fine.
8          MR. MORTON: Your Honor, that bring - -
9          THE COURT: I had no questions on that.  Does anyone
10  else care to be heard?  I hear no response.
11         MR. MORTON: Thank you, Your Honor.  That brings us
12  to the second and final item on the agenda, which is the fee
13  applications that have been filed by the respective
14  professionals in the case.  As we noted on the first day, per
15  Your Honor's inquiry, all the professionals simply filed
16  first and final fee applications, without the need for any of
17  the interim compensation procedures that are in place in
18  other cases of longer duration.  To that end, there was an
19  index attached to the agenda that matched the index that was
20  provided in the fee binders to Your Honor prior to, to the
21  hearing, and I understand that all professionals are on the
22  phone to address any questions Your Honor had with respect to
23  individual applications.
24         THE COURT: All right. We'll let's take them in
25  order, shall we?  Starting with AP Services.  Now as I

1  understand it, compensation there came in two components.

2  One, hourly rates, which were, pursuant to which AP kept

3  detail, filed and circulated it, and in the absence of

4  objection, received payment.

5         MR. MORTON: Um-hum.

6         THE COURT: And in addition to that, there's the

7  success fee.  Now they're seeking a success fee of a million

8  dollars.  I'm looking at the form of order that was, that is

9  in the binder, and it, the last decretal paragraph on page 2

10 purports to approve all amounts that have been paid to APS by

11 the Debtors, not just the success fee.  The detailed time

12 entries were never submitted to me for my review, and I would

13 be disinclined to give approval to something I have not

14 reviewed.  I'm content, in the absence of objection, to

15 approve the success fee, but no other portion of what's been

16 paid to AP unless they wish to submit the detail to me for my

17 review and approval.

18        MS. EISELE(Telephonic): Good afternoon, Your Honor.

19 Laura Eisele on behalf of AlixPartners.  This is a little bit

20 of an unusual situation, because we are acting in an officer

21 position.  So pursuant to our retention order, I'm not sure,

22 we weren't required to file traditional fee applications, but

23 rather just compensation reports.  And absent the objection,

24 absent any objection, we were entitled to the fees.  But I

25 don't know that we necessarily, and if Mr. Morton wants to

1  chime in that would be fine, or the US Trustee if they're in

2  the courtroom.  I don't know that necessarily we need to get

3  the fees approved.  We do sometimes like to just have that

4  sort of final sign off, but primarily what we were looking

5  for is to have the success fee approved.

6             MR. MORTON: Your Honor, to confirm what she, she

7  indicated under the protocol, and I'm sure that Mr.

8  Harrington will leap to the podium if I misstate it even

9  slightly, I believe it is correct that the protocol,

10 generally speaking, and thus as a result the specific

11 retention order entered in this case, don't actually

12 contemplate any approval, absent objection, any approval of

13 the, the amounts that are paid pursuant to the reports and

14 officer services.

15            THE COURT: And that's how I read the papers.

16            MR. MORTON: And so as such, and Ms. Eisele, you

17 know, what I would propose to do, assuming this is

18 acceptable, is simply strike the reference to, to, to the - -

19 well actually, I guess what we could do is strike that,

20 strike the reference to total amounts paid, and simply

21 indicate that the, that the, I'm sorry, the amounts paid to

22 APS in the application are approved on a final basis.  So

23 that it's clear that you're getting final approval for the

24 success fee, but that there's not an errant reference to

25 approval of fees that, in the first instance aren't required

1   to be reviewed by the Court absent objection by a party, and
2   in the second instance, as His Honor has noted, have not been
3   reviewed because they've not been submitted to the Court.
4           THE COURT: Okay.  So that with the copy of the
5   order that you have I presume what you would do is strike
6   out, in the last decretal paragraph, the words, including
7   those, and would that do it?
8           MS. EISELE(Telephonic): That would be fine for me,
9   Your Honor.
10          MR. MORTON: And certainly from our perspective as
11  well.
12          THE COURT: Okay.
13          MR. MORTON: Your Honor, if I may have one moment?
14  I just want to show this to the Trustee to make sure he - -
15          THE COURT: Go ahead.
16          MR. MORTON: Mr. Harrington has indicated that's an
17  acceptable change for him.
18          THE COURT: All right.  I have no questions with
19  respect to Deloitte Consulting, LLP.  Turning to Deloitte
20  Financial Advisory Services, give me a moment.  Sorry about
21  that.  Okay.  Mr. Sasso.
22          MR. SASSO(Telephonic): Yes, sir.
23          THE COURT: Okay.  Do you have your application in
24  front of you?
25          MR. SASSO(Telephonic): I do.

1             THE COURT: Okay.  Let me ask you to turn to Exhibit

2    C, page 4 of 24.

3             MR. SASSO(Telephonic): Okay.

4             THE COURT: I'm looking at two entries.  They're

5    both 4.7.  One's October 30th, no, they're both October 30th.

6    Two different professionals.  Was, it doesn't look like the

7    travel time - - well, was travel time billed at 50%?

8             MR. SASSO(Telephonic): Yes it was, Your Honor.

9             THE COURT: Okay.  Just wanted to confirm that.

10   Turn, if you would, to page 14 of 24.

11            MR. SASSO(Telephonic): Okay.

12            THE COURT: Again a travel entry is the first entry

13   on the page, November 12, '07.  That did not look to me to be

14   billed at half rate.

15            MR. SASSO(Telephonic): Okay.  Your Honor, the

16   amounts are at full rates in this schedule, and the deduction

17   is taken on Exhibit B.

18            THE COURT: All right.

19            MR. SASSO(Telephonic): It's reduced to 50% there.

20            THE COURT: All right.  Thank you.  All right.

21   Turn, if you would, to Exhibit D.

22            MR. SASSO(Telephonic): Okay.

23            THE COURT: Expense round trip airfare from Newark

24   to Mexico, $17 hundred.  I just want to confirm that that's

25   at coach rate.

1          MR. SASSO(Telephonic): I, I would assume so, Your
2    Honor. I can't confirm that without checking it. But our
3    professionals are well instructed that they're only allowed
4    to charge coach fares.
5          THE COURT: Okay. All right.
6          MR. SASSO(Telephonic): It sounds like coach to
7    Mexico, sir.
8          THE COURT: Yeah, that - -
9          MR. SASSO(Telephonic):  Out of country is very
10   expensive - -
11         THE COURT: I will - -
12         MR. SASSO(Telephonic):  - - for anything other than
13   coach.
14         THE COURT: I will say that's one fare I am not
15   familiar with. But that exhausts my questions with that.
16   I'm prepared to grant the relief that's been requested.
17         MR. SASSO(Telephonic): Thank you, Your Honor.
18         THE COURT: Let's turn to Ernst. All right. Ms.
19   Ellis.
20         MS. ELLIS(Telephonic): Yes.
21         THE COURT: Do you have your application in front of
22   you?
23         MS. ELLIS(Telephonic): I do.
24         THE COURT: Okay. If you would turn to the summary
25   of expenses in Exhibit B, page 1. Tell me when you're there.

1           MS. ELLIS(Telephonic): Okay.  I'm there.

2           THE COURT: I'm looking at several entries which

3   reflect the mileage charge for a daily commute.  Now is this

4   from, is it - - tell me where it's to and from.

5           MS. ELLIS(Telephonic): Our client is located in

6   Anderson, Indiana, and most of our individuals live in

7   Indianapolis, Indiana.

8           THE COURT: Okay.  So they're - -

9           MS. ELLIS(Telephonic): So it's a round trip

10  commute.

11          THE COURT: From home?

12          MS. ELLIS(Telephonic): From Indianapolis.  It's

13  from their home less the normal commute from their home to

14  our office, which is in downtown Indianapolis.

15          THE COURT: All right.  So that adjustment has been

16  made.

17          MS. ELLIS(Telephonic): To Anderson.

18          THE COURT: So that adjustment was made?

19          MS. ELLIS(Telephonic): Yes.

20          THE COURT: Okay.  Let's see.  Now if you would turn

21  to page 5.  I'm looking at an entry, I think it's for, is it

22  for hotel?  $4,227?  Or is that the 523.60?

23          MS. ELLIS(Telephonic): The 523.60 is for the hotel.

24          THE COURT: Okay.  And how many nights was that for?

25          MS. ELLIS(Telephonic): Four.

1                THE COURT: Okay.  Turn if you would to page 6.

2                MS. ELLIS(Telephonic): Yes.

3                THE COURT: There's a meal entry for 15 October,

4     $504.  Working meal with the audit team.  How many people did

5     that involve?

6                MS. ELLIS(Telephonic): Actually, that's the line

7     above.

8                THE COURT: Oh, I'm sorry.

9                MS. ELLIS(Telephonic): It's, the 500 is for the

10    dinner with, it was a planning dinner with our independent

11    review partner from out of town and partner and executives on

12    the team.

13               THE COURT: How many individuals.

14               MS. ELLIS(Telephonic): And we've already reduced

15    that.

16               MR. SIMON(Telephonic): Your Honor, this is John

17    Simon of Foley & Lardner.  I represent E&Y.  I'm sorry to

18    step in here.  I just wanted to give you a comment that

19    hasn't been mentioned, which is that the US Trustee had some

20    informal comments, including on that meal entry that Your

21    Honor just pointed out.

22               THE COURT: Yes.

23               MR. SIMON(Telephonic): And we reduced that.  It was

24    for five people.  But we reduced the meal expense to $250

25    there.

1        THE COURT: All right.

2        MR. SIMON(Telephonic): Because the US Trustee said

3   $50 a person was reasonable.  So it was $250 rather than 504

4   for those five people.

5        THE COURT: Very well.

6        MR. SIMON(Telephonic): We also reduced a couple of

7   other entries that were, they were all expenses, the US

8   Trustee's comments, Your Honor.  And that was a total

9   reduction of $931.17.

10       THE COURT: Okay.  Was that reflected anywhere in

11  the papers?

12       MR. SIMON(Telephonic): It, we couldn't reflect it

13  in the papers, Your Honor, because there was no certificate

14  of no objection, for instance, to be filed.  But it's to be

15  reflected in Mr. Morton's revised order.

16       THE COURT: Okay.  It's actually more helpful to me

17  if people tell me that ahead of time.

18       MR. SIMON(Telephonic): Well, yeah.  No one else had

19  mentioned it, Your Honor.  That's why I was jumping in right

20  there.

21       THE COURT: Thank you.

22       MR. SIMON(Telephonic): Sorry.

23       THE COURT: I mean before my review actually.

24       MR. MORTON: Sorry.

25       MR. SIMON(Telephonic): Oh, okay.

1          THE COURT: I don't know, I don't know when the

2    adjustments were agreed to, but.

3          MR. MORTON: They were actually agreed to just a day

4    or two ago.  And I should point out, Your Honor, that there

5    are some slight adjustments that were also agreed to with

6    respect to Young Conaway's fee application as well, and I'll

7    certainly note that when we get to that portion of the - -

8          THE COURT: Okay.

9          MR. MORTON:  - - of the hearing.

10         THE COURT: Well, okay.  Then before I, let me start

11   by asking the question.  That exhausts my questions with

12   respect to the Ernst application.  I'm otherwise prepared to

13   grant the relief that's been requested.  I didn't have any

14   questions about Greenberg Traurig or Huron.  Was there

15   anything either of those parties had to offer?

16         MR. MORTON: Your Honor, it's my understanding,

17   based on the order we prepared, that there were no comments

18   from any third parties, or other reductions requested.

19         THE COURT: Okay.  All right.  Let me turn to

20   Shearman.  Any comments on that application from any party?

21         MR. MORTON: I do not believe so, Your Honor, but

22   Mr. Bartner is on the phone, and can confirm that.

23         MR. BARTNER(Telephonic): Good morning, Your Honor.

24   Doug Bartner from Shearman & Sterling, co-counsel to the

25   reorganized Debtors.  No, we did not receive any comments on

1   our fee application.

2         THE COURT: All right.  Let me ask you to turn to,

3   it's, no.  Okay.  Bear with me for a minute.  I want to help

4   you get there.  It's the part of the November 27th invoice

5   that deals with asset sales.  So it's kind of buried in the

6   middle of the time detail.  But tell me when you get there.

7         MR. BARTNER(Telephonic): Okay Your Honor, I have

8   that.

9         THE COURT: Okay.  Turn to page 6.

10        MR. BARTNER(Telephonic): Okay.

11        THE COURT: There's a time entry for Kelly McDonald

12  which begins at the bottom of the page, November 5, 2007.

13        MR. BARTNER(Telephonic): Right.

14        THE COURT: For 13.1 hours.

15        MR. BARTNER(Telephonic): Yes.

16        THE COURT: The components of that entry, which

17  carry over to the following page, add up, by our math, to 11

18  hours.

19        MR. BARTNER(Telephonic): Right.  The reason that it

20  doesn't add up to 13.1, I'm advised, is that on our system,

21  if the description turns out to be too long, and as you can

22  see it got cut off in the middle of a sentence, the system

23  cuts it off, and doesn't print it out for us.  What we can

24  do, however, is supply the balance of Ms. McDonald's

25  description, where it says, Correspondence to Dan Gilligan

1  regarding?  You see it was cut off there.  But it continues.

2  And it continues to add up to the remaining 2.1 hours.

3              THE COURT: Okay.  And just tell me, just tell me

4  now what the description is.

5              MR. BARTNER(Telephonic): We're going to have to - -

6  it's November 5th, 2007.  We're going to get that while we are

7  here.  I don't have that in front of me.

8              THE COURT: Okay.  Yeah.  I guess the question I

9  have to ask is, well, I'll just make a statement.  It would

10 be helpful if someone pointed that out to me rather than for

11 the parties waiting for the Court to ferret it out.  Wouldn't

12 you think?

13             MR. BARTNER(Telephonic): Yes.  I think it would.

14 And we try to do that.  We missed this one, and we apologize

15 for that.  But I agree with you.  It would be appropriate to

16 point it out if it isn't the complete description.

17             THE COURT: Okay.  Well, while we're waiting for the

18 response on that, turn if you would to the expense detail,

19 which is farther back in the application, behind Exhibit C.

20             MR. BARTNER(Telephonic): Okay.

21             THE COURT: Page 4.

22             MR. BARTNER(Telephonic): I have that.

23             THE COURT: Okay.  And I'm looking at entries for

24 October 16, taxi expense, 46.76 and 57.77.  There are several

25 on the bottom of the page that follows.  Tell me what they,

1  who they were for, and where they went to and from, and why

2  it was that much.

3             MR. BARTNER(Telephonic): Yeah.  The, as to who they

4  are for, I'd have to go back and get that voucher, or have

5  people get that voucher to tell you.  The first entry on,

6  well, the next to last entry on the bottom of the page, it

7  was from our offices at 599 Lex in New York at 9:24 in the

8  evening.  It appears that it might have gone to Queens, you

9  see the Q E there.  But, again, I'd have to pull the voucher

10 to be sure.

11            THE COURT: Yeah.

12            MR. BARTNER(Telephonic): And it was - -

13            THE COURT: I mean, are these - -

14            MR. BARTNER(Telephonic):  - - it was either for a

15 lawyer or a legal assistant or a secretary working overtime

16 with the lawyer on the, on the matters that they were working

17 on intensive scheme.

18            THE COURT: All right.  And that's in - -

19            MR. BARTNER(Telephonic): On the next one - -

20            THE COURT: And that's in accordance - -

21            MR. BARTNER(Telephonic): 59 Lex to - -

22            THE COURT:  - - with the firm's policy?

23            MR. BARTNER(Telephonic): I'm sorry?

24            THE COURT: And that's in accordance with the firm's

25 policy?

```
 1              MR. BARTNER(Telephonic): Yes it is, Your Honor.
 2              THE COURT: Okay.  I see they're all after hours
 3   charges.  You need explain no further.  That answers my
 4   question.  And that's really all, all I have on that one,
 5   with the exception of that one, one entry for November 5th.
 6              MR. BARTNER(Telephonic): Right.  Which we're still
 7   - - are we going to find that?  Okay.  If we, hopefully we
 8   can find that as we finish up, before the end of this
 9   hearing.  Otherwise, we can figure out what to do about that.
10              THE COURT: Okay.  Try to do that, because, you
11   know, I hate to put anybody to more, additional trouble.
12              MR. MORTON: And Your Honor, I only hope that, that
13   the issues you have with Young Conaway's application are not
14   so lengthy that it provides them fairly ample time.
15              THE COURT: Actually I don't have any issues with
16   Young Conaway's application.  But I guess someone else did?
17              MR. MORTON: They, they did Your Honor.  And I'll
18   explain briefly.  There's a reduction of approximately $280.
19   As Your Honor likely recalls from your time in private
20   practice, from time to time expenses come through transferred
21   from other reports and bills.  Inadvertently a few pre-
22   petition expense items were included in the application.  The
23   Trustee's office pointed that out, and obviously we are fine
24   to write those items off.  So we have reduced the application
25   to be commensurate with that.
```

```
 1                THE COURT: Okay.
 2                MR. MORTON: With that, Your Honor, we do have an
 3   omnibus form of order that we can present.  So I think that,
 4   I don't know if Mr. Bartner has an estimated amount of time
 5   that, for purposes - -
 6                MR. BARTNER(Telephonic): I think we - - do we have
 7   it?
 8                MR. MORTON: Oh, perfect.
 9                MR. BARTNER(Telephonic): We have it.  I can read
10   that, Your Honor.  If we pick it up from regarding?
11                THE COURT: Yes.
12                MR. BARTNER(Telephonic): And I'll just read, and
13   you'll tell me when to stop if you wish.  It goes on rather
14   lengthy.  Language, regarding language for a motion, for the
15   motion, point one.  Telephone call with Mr. Hine, Quinn
16   Williams, and B. McKinley regarding sale motion background
17   language, point three.  Telephone call with Mr. Hine, Quinn
18   Williams, Jill Frizzley (phonetic), and Dan Gilligan
19   regarding financial figures, point two.  Revised NOP
20   (phonetic) sale motion.  Oh, are we going on to the next - -
21   okay.  Take a look.  One point seven.  I just want to make
22   sure it doesn't - - telephone call with Jill Frizzley, Akin
23   Gump, and Greenberg regarding NOP open issues, point four.
24   Telephone call with Greenberg Traurig regarding motion edit,
25   point two.  Meeting with Jill Frizzley regarding changes to
```

1  NOP sale motion, point five.  Correspondence to Akin Gump,

2  catching revised motion, point one.

3           THE COURT: All right.  Mr. Bartner, I'm satisfied.

4  Thank you for digging that information up.

5           MR. BARTNER(Telephonic): Okay, Your Honor.

6           MR. MORTON: Well, Your Honor, with that, I believe

7  I have an omnibus order that I can hand up that reflects the

8  reductions we announced on the record, and from my tally,

9  Your Honor was provided sufficient information, but didn't

10 actually require any additional write downs from any of the

11 parties today.  In addition, I will approach with the final

12 decree order for the, the non-lead cases, as well as the

13 AlixPartners' success fee order that, that contains the

14 interlineation that was discussed on the record.

15          THE COURT: Very well.

16          MR. HARRINGTON: Your Honor, for the record William

17 Harrington from the Office of the United States Trustee.  I

18 just wanted to apologize for not advising you in advance of

19 our stated reductions.  Usually we try to do that through the

20 CNO process.  In this case, because of the timing of the

21 hearing and our discussions with counsel, we didn't, we

22 didn't file, CNO's were not filed in this case, and we

23 apologize for that, Your Honor.

24          THE COURT: All right.  Thank you, Mr. Harrington.

25 All right.  The three orders presented have been signed.

1      MR. BARTNER(Telephonic): Thank you, Your Honor.

2      THE COURT: Is there anything further for this

3 morning?

4      MR. MORTON: Nothing from the Debtors, Your Honor.

5      THE COURT: All right.  Thank you all.  That

6 concludes this hearing.  Court will stand in recess.

7      MR. MORTON: Thank you, Your Honor.

8      MR. BARTNER(Telephonic): Thank you.

9      MS. EISELE(Telephonic): Thank you, Your Honor.

10   (Whereupon at 10:29 a.m. the hearing in this matter was

11 concluded for this date.)

12

13

14

15

16

17

18      I, Jennifer Ryan Enslen, approved transcriber for

19 the United States Courts, certify that the foregoing is a

20 correct transcript from the electronic sound recording of the

21 proceedings in the above entitled matter.

22

23   _/s/Jennifer Ryan Enslen_                    01/02/08
     Jennifer Ryan Enslen
24   43 Bay Boulevard
     Newark, DE 19702
25   (302)836-1905